Mitchell Thomas **BLAZAK**, Petitioner–Appellee–Cross–Appellant,

v.

James R. **RICKETTS**, Donald Wawrzaszek, Respondents–Appellants–Cross–Appellees.

Nos. 91–16549, 91–16562.

United States Court of Appeals, Ninth Circuit.

Argued June 23, 1992.

Decided Aug. 4, 1992.

Robert Bartels, Arizona State University, Tempe, Ariz., and Natman Schaye, Tucson, Ariz., for petitioner-appellee-cross-appellant.

R. Wayne Ford, Asst. Atty. Gen., Phoenix, Ariz., for respondents-appellants-cross-appellees.

Before: TANG, BEEZER, and BRUNETTI, Circuit Judges.

PER CURIAM.

This is an appeal and cross-appeal from a grant of habeas corpus by the district court in a death penalty case. We sua sponte have considered whether we have jurisdiction to consider this appeal, *see Collins v. Miller*, 252 U.S. 364, 366, 40 S.Ct. 347, 348, 64 L.Ed. 616 (1920), and whether we should remand this case because of prudential concerns for judicial finality and efficiency.

We find that the grant of habeas corpus was a final judgment ripe for immediate review.

I

In 1988, Petitioner Mitchell Blazak filed a second amended habeas corpus petition under 28 U.S.C. § 2254.[1] The petition contained thirty-seven claims for relief, eleven of the claims challenged the conviction and twenty-six of the claims attacked the sentence. Both parties indicate that the district judge in effect bifurcated the conviction and sentencing issues, considering all of the conviction issues, claims one through eleven, separately. In July of 1990, the district court granted summary judgment in favor of the state on claims five, six, seven, nine, and ten. The court held an evidentiary hearing on claims one, two, three, four, eight, and eleven. On September 10, 1991, the court entered an order denying habeas relief as to claims one, two, three, four, and eight. The court, however, granted habeas relief as to claim eleven, finding that "reasonable grounds exist to question Petitioner's competency at the time of trial." The order granted the Petition for Writ of Habeas Corpus, but left the "state free to retry Petitioner, assuming, of course, that at the time of such trial he is competent to be tried."

■ The dissent states that at this point "there was no indication the district court ever considered the judgment to be final." Dissent at 1416. We disagree. The district court's order clearly was designed to be final. The order granted the writ, left the state free to retry the petitioner, and returned all exhibits in the court's possession to the Arizona Attorney General's Office. Subsequently, on September 11, 1991, as required by Fed.R.Civ.Pro. 58, the clerk for the court entered a "JUDGMENT IN A CIVIL CASE" granting the writ as to claim eleven only.[2] The court's docket noted that

1. Petitioner was convicted of murdering a bartender and patron at the Brown Fox Tavern in Tucson, Arizona. The dissent describes the testimony at trial as having "established" certain facts. Blazak, however, challenges the sufficiency of the evidence at trial. Thus, the dissent's language may be premature since we have not yet considered the merits of this appeal.

2. The dissent makes the argument that this entry of judgment was invalid under Fed.R.Civ.P. 58(2) because the court did not "promptly ap-

judgment had been entered granting the writ of habeas corpus and "terminating the case." The state filed an appeal from the "district court's judgment which granted the writ of habeas corpus" and the Petitioner cross-appealed the "final judgment entered in this action." The district court then granted a Certificate of Probable Cause to allow Petitioner to proceed with his cross-appeal. We fail to see any reason to believe that the court, or the parties, considered the judgment to be anything less than a final judgment ending the litigation at the district court level. Indeed, had the district court contemplated further proceedings it would not have certified the case for appeal or returned the exhibits to the state.

The state appeals the grant of habeas as to claim eleven and Petitioner cross-appeals the denial of claims one through ten. On May 28, 1992, we issued an order to show cause as to why the case should not be dismissed without prejudice and remanded to the district court in conformity with the finality principles announced in the recent case of *Clisby v. Jones*, 960 F.2d 925 (11th Cir.1992) (en banc). On June 23, 1992, argument was held to discuss this question.

## II

We have jurisdiction under 28 U.S.C. § 2253 to review on appeal a "final order" of a district judge in a habeas corpus proceeding. The settled rule in civil proceedings that we have jurisdiction over only final judgments applies to habeas corpus proceedings. *Collins v. Miller*, 252 U.S. 364, 366, 40 S.Ct. 347, 348, 64 L.Ed. 616 (1920). The district court's order requiring the state to retry the Petitioner, if competent, left nothing to be done but the execution of the judgment and was thus final. *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Because this order disposed of all the conviction related claims and, by vacating the Petitioner's conviction, granted all the relief requested it is a final appealable judgment. *See Young v. Herring*, 777 F.2d 198, 202 (5th Cir.1985); *Blake v. Kemp*, 758 F.2d 523, 525 (11th Cir.), *cert. denied*, 474 U.S. 998, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985); *but cf. Stewart v. Bishop*, 403 F.2d 674, 679 (8th Cir.1968) (District court's order requiring state to provide hearing on voluntariness of defendant's conviction, but reserving jurisdiction over habeas petition, not a final judgment.).[3]

Both logic and case law dictate our conclusion that the order of the district court was a final judgment. The order left the state free to retry the Petitioner if it chose

prove of the form of the judgment." Dissent at 1415. The Rule 58 "separate judgment" was entered on the court's standard form for a "Judgment in a Civil Case." We have never applied Rule 58 in the manner the dissent urges here. Rule 58 was designed "to clarify when the time for appeal ... begins to run" and not to be a categorical imperative with talismanic powers to derail appellate jurisdiction. *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384, 98 S.Ct. 1117, 1120, 55 L.Ed.2d 357 (1978) (per curiam); *Hollywood v. City of Santa Maria*, 886 F.2d 1228, 1231 (9th Cir.1989). Furthermore, we have required a party to establish prejudice before dismissing an appeal because of an allegedly defective Rule 58 separate document. *See, e.g., Noli v. Commissioner*, 860 F.2d 1521, 1525 (9th Cir. 1988); *Harris v. McCarthy*, 790 F.2d 753, 757 (9th Cir.1986). Here, as in *Noli*, 860 F.2d at 1525, both parties understood the district court's order and subsequent judgment as final for purposes of appeal. To dismiss the appeal to allow the district judge to "approve the form" of the Rule 58 document would be absurd and nothing more than spinning our wheels "for no practical

purpose." *See Bankers Trust*, 435 U.S. at 385, 98 S.Ct. at 1120.

3. The dissent misreads the petition when it asserts that claims 16 and 33 pertain to Blazak's conviction, rather than his sentence. Claim 16 addresses the use of prior convictions as "aggravating factors" at the penalty phase. The use or attempted use of Blazak's criminal history during the guilt/innocence phase is not raised as an issue in the petition for habeas corpus. Likewise, claim 33 speaks to the unconstitutionality of the "imposition of capital punishment" in a case where the jury was not instructed on a lesser included offense. While such an argument could be made to challenge a conviction for capital murder, *see Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), Blazak chose to couch his claim as an attack on the validity of his sentence. In short, the most that a ruling on claim 16 or 33 could accomplish for Blazak is an order for resentencing. The claims do not go to the merits of the underlying conviction.

but nothing further remained for the district court's consideration. In *Browder v. Director, Illinois Dept. of Corrections*, 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978), the Supreme Court rejected the state's argument that a conditional grant of habeas corpus was not a final judgment leaving nothing to be done but to enforce its execution "because all the required procedures under the Habeas Corpus Act had not been completed at the time the order was issued." *Id.* at 265, 98 S.Ct. at 561. The state maintained that the district court erred in not deciding whether to hold an evidentiary hearing before granting the writ. The Court dismissed the appeal as untimely because the state did not appeal soon enough after the district court's order "directing the Petitioner be released unless the State retried him within 60 days." *Id.* at 256, 98 S.Ct. at 555. In reaching this conclusion the Supreme Court specifically held that the order was a final order. Similarly, the order in the present case was a final order. Unless the district court's judgment is overturned on appeal nothing is left for the district court but to ensure the execution of its judgment.

In *Young*, 777 F.2d at 201, the Fifth Circuit specifically considered the issue before us today: a grant of habeas corpus by the district court where the court did not rule on all the habeas arguments. The court noted that "the sole purpose of the habeas corpus proceedings is to test the validity or legality of the restraint of the Petitioner." *Id.* at 202 (quoting *Martin v. Spradley*, 341 F.2d 89, 90 (5th Cir.1965)). *Id.* Thus, the court held that an order granting a writ of habeas corpus ended the litigation on the merits and was a final appealable judgment. In reaching this conclusion the court cited to *Blake*, 758 F.2d at 525, where the Eleventh Circuit also decided that a habeas corpus grant ordering a new trial or release of the Petitioner finally settled the rights of both parties and was a final judgment. In the case before us, as in *Young* and *Blake*, both parties' rights have been determined and the litigation on the merits is over. Therefore, there is a final appealable judgment.

The dissent insists that the recent case of *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992) (en banc), "clearly undermined" the decision in *Blake* (and by virtue of its citation to *Blake*, the decision in *Young*). This is not true. In *Clisby* the court considered a district court's decision granting a writ of habeas corpus but reserving decision on some remaining claims. The Eleventh Circuit used its supervisory powers to issue a prospective rule requiring district courts to consider all claims for relief raised in a habeas petition, whether the habeas petition is granted or denied. Significantly, the court took jurisdiction over the appeal before it and decided the merits of the claims reached by the district court. *Id.* at 928–34. Thus, the court did not overrule its law that a grant of habeas corpus on some claims for relief can be a final judgment for purposes of appeal. *See, e.g., Wilson v. Kemp*, 777 F.2d 621, 622–23 (11th Cir.1985), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986); *Blake*, 758 F.2d at 525. Obviously, if the court did not believe the order in *Clisby* was a final judgment, no appellate jurisdiction would have existed and the court would have been powerless to decide the issues it reached.

In *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), the Court made it clear that an appellate court is powerless to hear a case unless there is a final judgment. In *Firestone* the appellate court held that an order denying motions to disqualify counsel was not a final judgment but made its decision prospective and went on to reach the merits of the challenged order. *Id.* at 369–70, 101 S.Ct. at 670–71. The Court upheld the ruling as to finality, but went on to state:

> If the appellate court finds that the order from which a party seeks to appeal [is not final], its inquiry is over. A court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only. We therefore hold that because the Court of Appeals was without

jurisdiction to hear the appeal, it was without authority to decide the merits. *Id.* at 379, 101 S.Ct. at 676 (footnote omitted). In reaching the merits in *Clisby* the Eleventh Circuit had to have considered the district court's judgment final or it would have been powerless to decide the case and its decision on the merits would be futile. There is a world of difference between a court issuing a prospective order under its supervisory power and a ruling that a court is without jurisdiction because no final judgment has been entered.[4]

In *Bermudez v. Smith*, 797 F.2d 108, 109 (2d Cir.1986), the Second Circuit reserved decision over the specific question facing us today. In its opinion, however, the court distinguished the situation facing it, a dismissal of most but not all of the habeas claims, from a grant of habeas corpus. The Court stated: "[I]n the situation here, unlike that in which (as in *Blake*) the writ is granted, petitioner has not secured 'all he could hope to achieve....' Thus, unlike in *Blake*, the judgment does not satisfy the classic test of finality...." *Id.* at 110 (citation omitted). Other cases, without much discussion, have assumed that a grant of a writ of habeas corpus is a final decision. *See, e.g., Hull v. Freeman*, 932 F.2d 159, 163 (3d Cir.1991) ("It is well-settled that a district court order conditionally granting a habeas corpus petition and directing the state to discharge the petitioner unless he or she is retried within a certain number of days is 'final' for purposes of sections 1291 and 2253."); *Martin–Trigona v. Shiff*, 702 F.2d 380, 385 (2d Cir.1983) ("An order granting habeas corpus review is final and subject to review."); *see also* 16 Fed.Procedure § 41:550 (Lawyers ed. 1983) ("Examples of final orders [on petitions for habeas corpus review] include—an order specifying that a prisoner be discharged if the state does not retry him within a specified period.").

Two other cases also illustrate how the grant of a writ of habeas corpus vacating a sentence and granting a new trial meets the classic tests of finality. In these cases, the courts faced the question of whether the issuance of a habeas corpus granting a new trial was a final judgment for purposes of 28 U.S.C. § 2255. The standard of reviewability for § 2255 cases is the same as for habeas corpus proceedings under 28 U.S.C. § 2254. 28 U.S.C. § 2255. In *United States v. Allen*, 613 F.2d 1248 (3d Cir. 1980), the court noted that once the § 2255 court grants the motion for a new trial the court is divested of jurisdiction and the role of the court ends because "'there is nothing for the court to do but execute the judgment.'" *Id.* at 1251 (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)). In *United States v. Dunham Concrete Products, Inc.*, 501 F.2d 80 (5th Cir.1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975), the court reached the same result. The court noted:

> In our case the § 2255 proceedings have ended with an order requiring the Government, if it wishes to persist in an effort to punish Dunham, to return to Square One and recommence its effort ab initio. A more final termination of the § 2255 action can scarcely be imagined; what possible purpose could it serve? We have jurisdiction.

*Id.* at 81–82.

■ Since the order is a final appealable judgment, granting the Petitioner all the success he could hope to obtain from his lawsuit, there was no requirement for the district court to certify the case for appeal under Fed.R.Civ.P. 54(b). *Young*, 777 F.2d at 202. Although the district court did not address the sentencing issues, these claims became moot and unnecessary to reach by virtue of the order vacating the conviction

---

**4.** A ruling that we are without jurisdiction to consider this appeal would prevent us from, as the dissent suggests, remanding the case. Our only recourse would be to dismiss the appeal. 449 U.S. at 380, 101 S.Ct. at 676. The parties

then would need to seek relief from the district court's order from the district court itself, perhaps under Fed.R.Civ.P. 60. The state would likely have a strong desire to secure relief some-

and requiring a new trial.[5] The district court's order implicitly disposed of the sentencing claims as moot once it vacated the conviction. Only if the district court's decision is reversed on appeal will it become necessary to reach these claims.

This case is not unlike other final judgments in civil cases, such as grants of summary judgment, which effectively would end the litigation if upheld but would require a remand for further proceedings if reversed by an appellate court. For instance, if in a libel case the district court grants summary judgment for the newspaper on the issue of liability, the court need never resolve the question of whether punitive damages would be appropriate. That issue has been mooted by the district court's ruling on the merits. Only if a court of appeals reverses the liability determination made by the district court and orders a trial will it become necessary to turn to the damages issues raised by the case. In such a case, we would not insist that the district court address hypothetically the damages issue before taking jurisdiction over the summary judgment ruling. Nor would we require a Rule 54(b) certification. There, as here, the ruling on liability grants one party full relief and dispenses with the need to pursue penalty issues.

### III

■ We believe it would be unwise in this case to exercise our supervisory powers to enact a rule similar to the one adopted in *Clisby*. Although we embrace the goals of prompt resolution of habeas petitions and the avoidance of piecemeal litigation, this is not a case where a remand to the district court to consider all the issues presented in the petition makes sense. Indeed, extending *Clisby* to this context would be mixing apples and oranges. In *Clisby* the district court granted

relief as to the imposition of a sentence of death, but reserved judgment on claims going to the underlying conviction. 960 F.2d at 926–27. As a result, the conviction issues remained alive and unresolved regardless of whether the court of appeals affirmed or reversed the district court's decision on the penalty issues. As the en banc court noted, this relief was partial because, even if the Petitioner was resentenced correctly, the conviction itself was still at risk. *Id.* at 937. Unlike *Clisby*, however, in the present appeal we have a complete resolution of all of the alleged constitutional infirmities arising from the relevant set of operative facts relative to conviction. *See id.* at 936. This decision renders the sentencing issues moot. There can be no sentence without a conviction. Thus, unlike *Clisby*, if we affirm, the habeas corpus action is completed. No further proceedings before the district court will be necessary. No live issues will remain unresolved. Only if we overturn the district court's judgment will the Petitioner's remaining sentencing issues become live claims. Even if the district court's grant of the writ is ultimately overturned, all of the conviction challenges will be resolved and leave only the sentencing issues to be considered.

Also unlike *Clisby*, when habeas is granted on a conviction issue rather than a sentencing issue, requiring the district court to resolve at one time all the issues raised in the petition could actually delay the proceedings unnecessarily and waste the district court's scarce judicial resources. In *Clisby* cases, having the district court address the conviction claims even though habeas has already been granted on the sentence promotes efficiency. The conviction issues remain alive despite the grant of habeas on the sentence and must be

how before it was obligated to retry Petitioner without a chance to appeal on the merits.

**5.** Two circuits, noting the need for prompt resolution of habeas corpus petitions and the unique nature of a habeas challenge to the legality of confinement, have held that Rule 54(b) does not apply to cases in which habeas and non-habeas claims are joined. *See Miller v. Misfud,* 762

F.2d 45 (6th Cir.1985); *United States ex rel. Stachulak v. Coughlin,* 520 F.2d 931 (7th Cir. 1975), *cert. denied,* 424 U.S. 947, 96 S.Ct. 1419, 47 L.Ed.2d 354 (1976). These cases emphasize that the focus of a habeas claim is upon the validity of the conviction and that once this is determined there is a final judgment in relation to the habeas action.

decided regardless of the outcome of the appeal. Instructing district courts to decide conviction claims after ruling on the sentencing issues thus does not impose any additional work burden on district courts. It just affects the timing of their decisions.

In Blazak's case, by contrast, an affirmance on appeal will obviate altogether the need for either the district court or this court to address Blazak's penalty phase claims. True, in the event this court reverses the district court's determination, we will have to remand for resolution of the sentencing issues and presumably await the next appeal. On the other hand, should we ultimately affirm the grant of habeas on the conviction, an interruption of the present appeal for the district court to decide sentencing issues that we will never reach will occasion needless delay and hardship for all concerned. The district court will be required to expend valuable time and scarce judicial resources deciding sentencing claims that our affirmance renders purely academic.[6] After all, from the district court's viewpoint, Blazak's sentencing claims are moot. Thus what appears procedurally economical to appellate judges may, from the district court's vantage point, be deemed unjustifiably burdensome and costly. Judicial efficiency, in this context, is truly in the eyes of the beholder.[7]

All of Petitioner's claims have been raised in his second amended habeas corpus petition. Both of the parties here wish us to proceed. The Supreme Court recently has urged us to "take all steps necessary to insure a prompt resolution of" habeas claims, particularly where federal courts

have ordered the stay of an execution by a state. *In re Blodgett,* —— U.S. ——, ——, 112 S.Ct. 674, 676, 116 L.Ed.2d 669 (1992). There has been no piecemeal presentation of the issues in this case. A decision of this appeal will promptly move this matter to its next logical phase—either affirmance of the district court granting of the writ and retrial, or reversal of the granting of the writ and remand for consideration of the sentencing issues.[8]

The dissent implies that the parties are engaged in an odious and collusive attempt to confer jurisdiction upon our court. Dissent at 1416. At the time of the proceedings, the district court and the parties proceeded based on the reasoned assumption that a grant of the relief requested amounted to a final judgment. At the time of the district court's judgment and the parties' appeals there was no cause to believe this was anything but a final order. The *Clisby* case was not decided until eight months after the appeal was filed. Until that time the only case supporting the notion that the judgment possibly might not be final was a 1968 case from the Eighth Circuit, *Stewart v. Bishop,* 403 F.2d 674 (8th Cir.1968), which apparently had never been followed directly.

It is significant that even *Clisby* applied the rule *prospectively,* enforcing the rule only in cases *decided* 120 days after the court issued its opinion. 960 F.2d at 938. Thus, the *Clisby* court avoided the result urged by the dissent here; to suddenly remand the case and prolong the proceedings with no fair warning. In the present case, the parties appealed the decision in

---

**6.** Of course, under the dissent's approach, courts of appeals may now have to abandon their historic practice of deciding only those issues necessary to dispose of an appeal. Perhaps we too will now have to decide *all* of an appellant's issues presented on appeal, regardless of necessity, simply to avoid remands from the Supreme Court in habeas corpus cases. In cases where the Supreme Court would deny certiorari or affirm the initial ruling, increasing the courts of appeals' work load in this manner promotes neither efficiency nor the expeditious resolution of petitions for habeas corpus.

**7.** Moreover, unlike habeas grants exclusively on sentencing issues, the grant of a habeas petition

because of the constitutional invalidity of a conviction raises concerns that a possibly innocent person has been unjustifiably incarcerated on death row for a number of years. Delaying retrial in such cases, while attorneys fight over a sentence that may no longer exist, risks the perpetuation of a monumental injustice, should retrial ultimately result in an acquittal.

**8.** We do not decide whether the *Clisby* approach would be appropriate in cases where habeas corpus is granted on sentencing issues, rather than on claims going to the merits of the underlying conviction.

October of 1991. For us to remand the case in July of 1992, ten months later and after full briefing by the parties, with no progress having been made, would appear to be a delay in the litigation.

In fact, at this point, if we enact a rule requiring remand of all habeas corpus cases where habeas has been granted but not all the claims were addressed below, we would do so with no idea of the number of cases this rule would affect. Indeed, there is the potential that some cases that have already been argued and are nearing decision would have to be remanded. Such a course is ill-advised.

## IV

Accordingly, it is hereby ordered that we will hear oral argument on the merits of this appeal in San Francisco on September 11, 1992, at 10:00 a.m.

BEEZER, Circuit Judge, dissenting:

This case epitomizes the worst in unnecessary, time-consuming, duplicative and piecemeal appellate review. It guarantees every petitioner for a writ of habeas corpus who presents multiple claims for relief a separate full-fledged appeal on each successful claim. Such a procedure is contrary to law and threatens to undermine the singular importance of the writ of habeas corpus. In my view, we lack jurisdiction to consider the merits of the appeal and cross-appeal to this court.

## I

Mitchell Thomas Blazak was convicted of murdering a bartender and a patron in the Brown Fox Tavern in Tucson, Arizona shortly after midnight on December 15, 1973. Blazak was also convicted of assault with intent to commit murder of a second patron and attempted armed robbery arising out of the same episode.

The testimony at Blazak's trial established that Blazak entered the tavern, pointed a pistol at the bartender and demanded money. When the bartender refused, Blazak shot him four times, killing him with a "perforating gun shot wound of

the heart." After the bartender staggered and fell behind the bar, Blazak turned the pistol on two seated patrons. One patron was killed with a shot to the neck. The second was wounded in the arm and leg. Blazak, according to one witness, seemed to "get a kick out of killing."

Blazak was sentenced to death on each of the murder convictions. His convictions and sentence were affirmed on appeal. *State v. Blazak*, 114 Ariz. 199, 200, 560 P.2d 54, 55 (1977). Blazak then filed a first petition for post-conviction relief in state court, a first petition for a writ of habeas corpus in district court, a second petition for post-conviction relief in state court, an amended petition for a writ of habeas corpus in the district court and, finally, a second amended petition for a writ of habeas corpus in the district court. The Arizona Supreme Court denied review of Blazak's petitions for post-conviction relief, and the district court stayed Blazak's first petition for a writ of habeas corpus pending exhaustion of state remedies.

Blazak's second amended petition for a writ of habeas corpus raises 37 claims for relief. *See* attached Appendix. By memorandum decision, the district court denied Blazak's petition on claims 1 through 10 and then granted Blazak's petition on claim 11. After the district court ruled in Blazak's favor on claim 11, the clerk prepared, signed and entered a "Judgment In A Civil Case," which stated "that the petition for Writ Habeas Corpus is GRANTED as to Claim ELEVEN (11) ONLY." The district court, however, never approved the judgment. Accordingly, there was no valid entry of judgment. *See* Fed.R.Civ.P. 58 ("the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it."). *See also American Interinsurance v. Occidental Fire & Cas.*, 835 F.2d 157, 160 (7th Cir.1987) ("When, as in our case, the judgment entails declaratory relief ... it is important—and it is mandatory under Rule 58(2)—that the district judge participate in the formulation and entry of the judgment.").

Not only was there no valid entry of judgment under Fed.R.Civ.P. 58, but the

district court did not direct the entry of a final judgment as to claims 1 through 11 under Fed.R.Civ.P. 54(b) or make an express determination that there was no just reason for delay. Nor did the district court certify a controlling question of law pursuant to 28 U.S.C. § 1292(b). Nor did the district court ever issue a writ of habeas corpus. *See* Fed.R.Civ.P. 81(a) ("The writ of habeas corpus ... shall be directed to the person having custody of the person detained.").

Despite these infirmities, and despite the fact that there was no indication that the district court ever considered the judgment to be final, both the petitioner and the respondents filed notices of appeal. Blazak purportedly appealed from the denial of claims 1 through 10; the respondents purportedly appealed from the granting of claim 11. Although the parties contend that the district court bifurcated the proceeding from the beginning, electing to decide first the claims involving Blazak's conviction, the validity of that contention is questionable given that the original presiding district judge ordered the respondents to file an answer responding to all claims raised in the petition.

Several of Blazak's claims which have not been addressed by the district court are intertwined claims which could affect the merits of Blazak's conviction and the imposition of the penalty of death. Undecided claim 16, which alleges that "[t]he prosecution did not inform Mitchell Blazak that it intended to attempt to prove that he had prior convictions before his state trial....," clearly relates to Blazak's conviction, as does undecided claim 33 which involves a challenge to certain jury instructions. *See* Appendix.

The parties now argue that jurisdiction is appropriate under 28 U.S.C. § 1291, contending that claims 12 through 37 have become moot by the partial judgment in Blazak's favor on claim 11. Blazak asserts, however, that he has not abandoned or waived the undecided claims and acknowledges that the district court may ultimately be required to decide them. These arguments in support of jurisdiction

"smack[ ] odiously of a collusive attempt by the parties to confer federal subject matter jurisdiction by consent." *Boynton v. United States,* 566 F.2d 50, 54 n. 7 (9th Cir.1977). Because the collusive agreement of parties may not support jurisdiction, we are bound to examine the issue independently.

## II

For a judgment to be appealable, it must be final "not only as to all the parties, but as to the whole subject-matter and as to all the causes of action involved." *Collins v. Miller,* 252 U.S. 364, 370, 40 S.Ct. 347, 349, 64 L.Ed. 616 (1920). A judgment is not final under 28 U.S.C. § 1291 if it leaves active claims unresolved. *See Sierra Club v. Dept. of Transp.,* 948 F.2d 568, 571 (9th Cir.1991) (judgment only partially disposed of claims and was not appealable); *Wolf v. Banco Nacional de Mexico, S.A.,* 721 F.2d 660, 662 (9th Cir.1983) (judgment did not consider two claims which remained live, therefore judgment was not final). *See also* David G. Knibb, *Federal Court of Appeals Manual* 46–47 (2d ed. 1990) ("When judgment is entered on some but not all claims, or against or in favor of some but not all parties, the judgment is not final for purposes of appeal unless the district court certifies its finality.").

In this case, there was no valid entry of judgment on claims 1 through 11. Nor did the court ever consider claims 12 through 37. Consequently, the judgment was not appealable under 28 U.S.C. § 1291 as a "final decision." *Banco Nacional de Mexico, S.A.,* 721 F.2d at 662. Moreover, the district court did not certify the partial judgment pursuant to Fed.R.Civ.P. 54(b). Without such certification the partial judgment in this case is unreviewable. *Unioil, Inc. v. E.F. Hutton & Co., Inc.,* 809 F.2d 548, 554 (9th Cir.1986), *cert. denied,* 484 U.S. 823, 108 S.Ct. 85, 98 L.Ed.2d 47 (1987).

## III

The standards of finality in habeas corpus proceedings are no less exacting than in other cases. *Andrews v. United States,* 373 U.S. 334, 340, 83 S.Ct. 1236, 1240, 10

L.Ed.2d 383 (1963). Recently, the Supreme Court, emphasizing the burden that habeas review places on "scarce federal judicial resources," urged the federal courts to adopt procedures to "assure[] its continued efficacy." *McCleskey v. Zant,* —— U.S. ——, —— – ——, 111 S.Ct. 1454, 1469–71, 113 L.Ed.2d 517 (1991). In *McCleskey,* the Court held that unless a habeas petitioner shows cause and prejudice, a court may not reach the merits of new claims not previously raised which constitute an abuse of the writ. Likewise, the Court has held that, without a showing of cause and prejudice, a court may not reach the merits of successive claims which raise grounds identical to grounds heard and decided on the merits in a previous petition, *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), or procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims. *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

All of these cases are "premised on [the Court's] concerns for the finality of state judgments of conviction, and the 'significant costs of federal habeas review.'" *Sawyer v. Whitley,* —— U.S. ——, ——, 112 S.Ct. 2514, 2518, 120 L.Ed.2d 269 (1992) (citations omitted). *See also Keeney v. Tamayo–Reyes,* —— U.S. ——, ——, 112 S.Ct. 1715, 1718, 118 L.Ed.2d 318 (1992) ("Federal habeas litigation also places a heavy burden on scarce judicial resources, may give litigants incentives to withhold claims for manipulative purposes, and may create disincentives to present claims when evidence is fresh.") (citation omitted). Furthermore, all of these cases attempt to "obviate ... the necessity for accommodating multiple filings." *In re James Blodgett,* —— U.S. ——, ——, 112 S.Ct. 674, 676, 116 L.Ed.2d 669 (1992). To the extent that the requirements set out in these cases "reduce[] piecemeal litigation, both the courts and the prisoner[] should benefit, for as a result the district court will be more likely to review all of the prisoner's claims in a single proceeding, thus providing for a more focused and thorough re-

view." *Rose v. Lundy,* 455 U.S. 509, 520, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982).

In *Clisby v. Jones,* 960 F.2d 925 (11th Cir.1992) (en banc), the Eleventh Circuit, responding in part to the Supreme Court's concerns, recently held that in a habeas corpus proceeding presenting multiple claims for relief, the appellate court should exercise jurisdiction only after the district court disposes of all claims. In *Clisby,* the Eleventh Circuit stated that

> [t]he havoc a district court's failure to address all claims in a habeas petition may wreak in the federal and state court systems compels us to require all district courts to address all such claims. Accordingly, this court, from now on, will vacate the district court's judgment without prejudice and remand the case for consideration of all remaining claims whenever the district court has not resolved all such claims.

*Id.* at 938.

The Eleventh Circuit noted that the district court may certify a partial disposition of claims as a final judgment under Fed. R.Civ.P. 54(b) when there is "an express determination that there is no just reason for delay." Rule 54(b) certification in habeas proceedings, however, is justified "in only the rarest of cases." *Id.* at 938 n. 17.

The *Clisby* decision is important for these proceedings because it effectively reversed a conflict with the Eighth Circuit referred to by Justice White in his dissent from the denial of certiorari in *Kemp v. Blake,* 474 U.S. 998, 999, 106 S.Ct. 374, 375, 88 L.Ed.2d 367 (1985). Now the Eighth and the Eleventh Circuits agree that, when a district court grants habeas relief to a petitioner on some but not all of the claims presented for consideration, the court of appeals may not review the district court decision unless the order also finally disposes of the remainder of petitioner's claims. *See Stewart v. Bishop,* 403 F.2d 674, 679–80 (8th Cir.1968). We have previously cited *Stewart* with approval. *See Lampman v. United States Dist. Ct. for Cent. Dist. of Cal.,* 418 F.2d 215, 216 n. 1 (9th Cir.1969), *cert. denied,* 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970) (policy

against piecemeal litigation required dismissing appeal and denying petition for review of an interlocutory non-appealable order). The only contrary circuit authority, *Young v. Herring,* 777 F.2d 198 (5th Cir. 1985), relies on the Eleventh Circuit's decision in *Blake v. Kemp,* 758 F.2d 523 (11th Cir.), *cert. denied,* 474 U.S. 998, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985), now clearly undermined by *Clisby.* To ground this Circuit's future habeas practice on an undermined and ill-advised decision like *Young,* followed by no other circuit, is nothing short of ludicrous.

### IV

In *Bermudez v. Smith,* 797 F.2d 108 (2d Cir.1986), the Second Circuit, referring to habeas petitions, stated that

> [t]o allow separate claims to be dismissed and then heard on appeal while other claims remain to be adjudicated by the district court would encourage piecemeal, and time-consuming, litigation. Promotion of such litigation would run contrary to long-standing policy, solidly grounded in the nature of the relationship between trial and appellate courts, involving the saving of time and the avoidance of unnecessary expense and unnecessary appellate lawmaking, as well as of duplicative effort on the part of all concerned.

*Id.* at 109–110.

Those same policy concerns are implicated in this case. Equally important in the calculus are the concerns of the petitioner whose claims are potentially put at risk by the type of piecemeal review encouraged in this case. It is a grave disservice, after *McCleskey,* to expose a petitioner for a writ of habeas corpus, such as Blazak, to multiple appeals possibly resulting in the involuntary dismissal of constitutional claims. *See Vasquez v. Harris,* — U.S. ——, 112 S.Ct. 1713, 118 L.Ed.2d 418 (1992).

### V

We have jurisdiction "of appeals from all final decisions of the district courts...."

28 U.S.C. § 1291. An order that grants a petition for a writ of habeas corpus without resolving all claims raised is not a "final decision." Our jurisdiction over civil appeals from the grant or denial of a petition for a writ of habeas corpus is not expanded by 28 U.S.C. § 2253. *See* 28 U.S.C. § 2253 ("In a habeas corpus proceeding ... the final order shall be subject to review, on appeal, by the court of appeals for the circuit where the proceeding is had."). Accordingly, this appeal should be dismissed for want of jurisdiction.

I would remand Blazak's second amended petition to the district court for further proceedings and the entry of a final judgment.

### APPENDIX[1]

CLAIMS NOS. 1–5: SUFFICIENCY AND ADMISSIBILITY OF THE EVIDENCE

At trial, the evidence established that a man wearing a ski mask walked into the Brown Fox Tavern in Tucson, Arizona on the evening of December 14, 1973. The gunman demanded money from the bartender and that request was refused. The gunman then fired the pistol, killing the bartender and one of the patrons, while wounding another.

In July of 1974, Kenneth Pease was arrested for unrelated felony charges in New Mexico. Pease, a convicted felon and con man, initially denied having any knowledge of the Brown Fox homicides. After receiving a grant of transactional immunity, however, Pease claimed to be an accomplice in those crimes and accused Mitchell Blazak of being the gunman. No other witness has ever identified Mitchell Blazak as having committed these offenses.

At trial, the state had no hope of obtaining a conviction without the testimony of Kenneth Pease. The evidence established that Pease had a criminal record, had a poor reputation for truthfulness, had a strong motive to fabricate and give false testimony concerning important events in this case. For example:

---

**1.** Second Amended Petition for A Writ of Habe-

as Corpus of Mitchell Thomas Blazak.

a. Pease was an accomplice in these offenses.

b. Pease received complete immunity from prosecution in exchange for his testimony in this case.

c. While the jury was deliberating in Mitchell Blazak's case, the Pima County Attorney's Office dismissed other felony charges that were pending against Pease.

d. Pease was convicted of two felonies in Ohio in 1971.

e. Pease claimed that a blonde woman walked out of the Brown Fox Tavern immediately before he and the gunman entered. None of the other witnesses corroborated this testimony.

f. Pease claimed that, immediately before the shootings occurred, the gunman stated, "The god damn safety's stuck." None of the people inside the bar reported hearing this statement.

g. Pease described the ski mask worn by the gunman as blue in color. The descriptions given by all witnesses to the homicides were substantially different from that given by Pease.

h. Pease described the ski mask worn by the gunman as being all one color. The assistant manager of the store from which Pease claims the masks were stolen testified that the store sold no solid color masks.

i. Pease testified that the ski masks did not have eye holes cut in them and that he cut such holes. The assistant manager of the store from which the masks were allegedly taken testified that the store sold no masks without precut eye holes.

j. Post-conviction counsel to Mr. Blazak, Thomas Higgins, Esq., found a mask that matched Pease's description of the gunman's mask buried in the yard of the house in which Pease resided at the time of the Brown Fox murders.

k. At trial, Pease claimed that he went to Mitchell Blazak's home at about 5:30 p.m. on the evening in question. The two men then went to Lazy Creek Farm between 7:45 and 8:00 p.m. In his first pretrial statement to police, Pease stated that he was "sure" that Mr. Blazak came to Pease's welding shop about 8:00 p.m. that night. Shortly before trial, in an interview with defense counsel, Pease stated that they left the farm about 9:00 p.m. All the witnesses who were at the farm that night confirmed that the two men left at or after 9:00 p.m. This timing was confirmed by Pease's wife, Carolyn Pease. This timing is significant because Pease claimed that Mitchell Blazak stole the ski masks after they left the farm. The store from which Pease claimed the masks were stolen closed at 9:00 p.m.

l. At trial, Pease added stops made by he and Mitchell Blazak at a discount store, a jewelry store and another tavern. These were absent from Pease's pretrial statements.

m. Pease claimed at trial that he and Mitchell Blazak went to the Lazy Creek Farm, where Pease consumed two six packs of beer. Other persons at the farm testified that very little beer was consumed.

n. Pease claimed that while at Lazy Creek Farm, Mitchell Blazak and others borrowed Pease's car. They went to a specified location and caused some property damage. Unrefuted evidence established that this incident occurred on December 10, 1973, four days before the Brown Fox Tavern incident.

o. At trial, Pease testified that, immediately after leaving Lazy Creek Farm, he and Mitchell Blazak went to the Pease residence. Pease went inside and put tape over the name tag of a coat that he had borrowed at the farm. This allegation did not appear in Pease's pretrial statements.

p. Pease claimed at trial that he left his orange and white ski mask in his car. This testimony was refuted by his wife, Carolyn Pease, who found some clothing and a pack of unfiltered Camel cigarettes in the car that morning. Mitchell Blazak smoked Marlboro filters. Mrs. Pease stated that there was no ski mask in the car.

q. Pease claimed that on the morning after the homicides, Mitchell Blazak came to his residence and showed Pease a newspaper article about the shootings. No newspaper articles appeared until a day later, December 16, 1973. Further, Mitchell Blazak's neighbor, Victoria Blagg, testified that on the morning following the homicides, she traveled to Nogales with her husband and Mr. Blazak, leaving at approximately 6:15 a.m.

r. An acquaintance of Pease, Daniel Chandler, testified at trial that he had discussed the Brown Fox homicides with Pease after they occurred. According to Mr. Chandler, Pease stated the homicides were not the result of an aborted robbery, but were professional assassinations. At trial, Pease admitted making this statement, but claimed that he had been lying in an effort to "con" money from Mr. Chandler.

s. Four acquaintances of Pease testified that he was a dishonest and untrustworthy individual.

t. Pease wrote checks on insufficient funds in both Arizona and Nevada.

By calling Kenneth Pease to testify at trial, the prosecution knowingly introduced perjured testimony.

On the day after the Brown Fox homicides, two different individuals gave two different ski masks found along roadsides to the Tucson police. The state was allowed to introduce one of the masks at trial, Exhibit 34. This mask was admitted despite the facts that:

a. Hairs from the other mask, defense Exhibit "A", were not tested.

b. The mask was not found on the route first described by Pease as that taken after the Brown Fox shootings.

c. Pease did not see Mitchell Blazak throw his mask out the window, but testified that Mr. Blazak took it with him when Pease dropped him off at home.

d. Pease did not identify the mask as matching the one worn by the gunman, nor did the mask match the descriptions given by any of the witnesses.

The state was allowed to present testimony from two experts concerning hair taken from the ski mask, Exhibit 34. Those experts were Captain Carl Kempe of the Tucson Crime Laboratory, and Morris Clark of the Federal Bureau of Investigations Laboratory. Their testimony was admitted despite the fact that:

a. There was no foundation for the mask and therefore the hairs, as noted in paragraph 18, above.

b. The citizen who found the mask testified that it was inside out and that she threw it on the floor in her car.

c. The police officer who received the mask testified that it was right side out and that he did not put it in a bag or envelope, but simply placed it in the console of his car.

d. Captain Kempe testified that he examined two human hairs. Those same hairs were allegedly mailed to the F.B.I. Laboratory. Mr. Clark testified that he opened the package and found that it contained three human hairs, none of which could have been matched to meet the lengths of the hairs described by Captain Kempe.

e. Captain Kempe testified that there were not root bulbs on the two hairs that he sent to Morris Clark. Mr. Clark testified that two of the three hairs he received had no root bulbs.

f. Based upon his examination, Mr. Clark could only testify that it was possible, not probable, that the hairs he examined came from Mitchell Blazak.

Following trial, Mitchell Blazak's new attorney, Thomas Higgins, uncovered new evidence of governmental misconduct which further established that it was error to admit the ski mask, Exhibit 34, and hairs allegedly taken from it. That evidence consisted of testimony from Pima County Justice Court Constable Byron Stuckey. Mr. Stuckey testified that former Pima County Sheriff Deputy Michael Tucker informed him that Tucker and another deputy had tampered with the hair evidence in order to develop falsely incriminating evidence against Mr. Blazak. In addition, the testimony of Patricia Ashburn established that

Tucker had boasted to others that he had planted evidence in the Brown Fox Tavern case. The evidence further established that Deputy Tucker had access to the hairs before they were sent to the F.B.I. laboratory.

Based upon the foregoing, it is respectfully submitted that the state court violated Mitchell Blazak's constitutional rights as follows:

a. Claim No. 1—The evidence at trial was insufficient to support a rational finding of guilt. Mitchell Blazak's convictions and sentences were therefore obtained and imposed in violation of the Due Process Clause of the Fourteenth Amendment.

b. Claim No. 2—The testimony of the admitted accomplice, Kenneth Pease, was not sufficiently corroborated to support these convictions and therefore violated former A.R.S. § 13–136. These convictions and sentences were obtained in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

c. Claim No. 3—The state court erred in admitting testimony concerning the ski mask into evidence due to the absence of any foundation connecting it to this case. In so doing, the court violated Mr. Blazak's right to due process of law as guaranteed by the Fourteenth Amendment.

d. Claim No. 4—The state court erred in admitting testimony concerning hairs removed from the ski mask due to the absence of any foundation connecting that evidence to this case and due to the contamination of this evidence. In so doing, the court violated Mr. Blazak's right to due process as guaranteed by the Fourteenth Amendment.

e. Claim No. 5—Newly discovered evidence which probably would have changed the jury's verdict was presented to the state court in post-conviction relief proceedings. That court's failure to grant relief violated Mr. Blazak's right to due process under the Fourteenth Amendment.

CLAIM NO. 6: NON–DISCLOSURE OF BENEFIT TO INFORMANT

At trial, Pease testified that he was being held in jail on unrelated charges and that he had not been promised any benefits concerning those charges in exchange for his testimony in the Brown Fox case. Further, the jury was never informed of the fact that Pease had been released from jail to travel to New Mexico unescorted and without posting bond prior to trial.

In his closing argument, the prosecutor told the jury that "the first point is there was absolutely no motive whatsoever brought out in this courtroom for Ken Pease to lie." While the jury deliberated, however, the unrelated charges against Mr. Pease were dismissed and he was released from custody.

The state subsequently admitted that the actual dismissal of the unrelated charges against Mr. Pease was withheld until the jury began deliberations because the prosecutor "didn't want to give the defense more ammunition." The state suppressed this relevant evidence in order to prevent the jury from hearing testimony favorable to the defense.

The foregoing conduct served to deprive Mitchell Blazak of his rights to a fair trial, to due process, and to confront and cross-examine witnesses under the Sixth and Fourteenth Amendments.

CLAIM NO. 7: PROSECUTORIAL MISCONDUCT IN CLOSING ARGUMENT—"PHONY" DEFENSE.

In his closing argument, the prosecutor repeatedly referred to the defense as "phony", opining that Mitchell Blazak and his attorney fabricated the defense in this case.

This misconduct by the state violated Mr. Blazak's rights to due process and to a fair trial under the Fifth and Fourteenth Amendments.

CLAIM NO. 8: INEFFECTIVE ASSISTANCE OF COUNSEL

At the time of his trial, Mitchell Blazak had a prior conviction for assault with intent to commit murder. Had this conviction not existed, Mr. Blazak would have

taken the witness stand in his own defense at trial. In the *prior proceedings*, Mr. Blazak was deemed to be incompetent to stand trial for a lengthy period of time and his competency was in question throughout the proceedings. Despite this fact, the court failed to make any attempt to determine whether Mr. Blazak was competent to enter the plea of guilty which led to his conviction. Although his prior conviction was clearly invalid, trial counsel failed to challenge its admissibility for purposes of impeachment or otherwise.

Prior to trial, Mr. Blazak engaged in unusual behavior calling his competency into question. Despite these indications, as well as Mr. Blazak's lengthy history of mental illness and incompetency, defense counsel made no attempt to determine whether his client was competent to stand trial.

Prior to trial, defense counsel was aware of a rock throwing incident which Pease claimed occurred on the night that Mitchell Blazak committed these crimes. Defense counsel failed to investigate this incident. Had he done so, he would have obtained irrefutable evidence that this incident occurred *four days before* the Brown Fox homicides.

Prior to trial, defense counsel had information indicating that Kenneth Pease had buried a ski mask near the time of the Brown Fox incident in the yard at his residence. Defense counsel failed to investigate. This mask was located in that yard after trial by subsequent defense counsel. The mask matched Pease's description of the gunman's mask.

At trial, Pease claimed that, earlier in the morning following the Brown Fox homicides, Mitchell Blazak came to his house and showed him a newspaper article about the shootings. Although no such article appeared until the next day, defense counsel failed to bring this to the jury's attention.

Defense counsel promised the jury in his opening statement that he would call Michael Blagg as an alibi witness. Defense counsel failed to do so which led not only to the absence of this evidence, but to assisting the prosecutor in his closing argument.

Defense counsel failed to request jury instruction on felony murder or on lesser included offenses, such as second degree murder.

For all of the foregoing reasons, it is submitted that Mitchell Blazak was denied the effective assistance of counsel at trial, thus violating his rights under the Sixth and Fourteenth Amendments.

CLAIMS NOS. 9–10: INVOLUNTARY ABSENCE FROM CRUCIAL PROCEEDINGS:

Mitchell Blazak was indicted by a Pima County Grand Jury on July 15, 1974. He has remained in custody continuously since that time.

Clay Diamos, Esq., who had represented Mr. Blazak in a prior criminal proceeding and had conducted an investigation concerning the allegations in the present case, was appointed as defense counsel. On August 7, 1974, a hearing was conducted at which Mr. Diamos was allowed to withdraw as counsel. Mr. Blazak received no notice of this hearing and was not present. Over objection by the Pima County Public Defender, that office was appointed to represent Mr. Blazak.

On August 13, 1974, a hearing was conducted of which Mr. Blazak had no notice and was not present. At that time, the Public Defender's Office was allowed to withdraw for reasons apparently presented to the court in an off-the-record discussion. Howard A. Kashman, Esq., was appointed as defense counsel.

At a hearing conducted September 25, 1974, Mr. Blazak personally informed the court that he wished to be present at all proceedings in his case. The court entered an order that Mr. Blazak be transported to all future hearings.

Five days later, a hearing was held at which Mr. Blazak was not present and of which he had no notice. At that hearing, the state's motion to continue the trial was granted over defense objection.

Based on the foregoing, it is respectfully submitted that Mitchell Blazak's constitu-

tional rights were violated by the state court as follows:

a. Claim No. 9—By conducting the foregoing proceedings in Mr. Blazak's absence, the state court violated his rights to due process, to public proceedings in his case, to confront and cross-examine witnesses, and to the effective assistance of counsel, all in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

b. Claim No. 10—By allowing Mr. Diamos to withdraw as counsel without notice to Mr. Blazak or the opportunity to be heard, the state court denied Mr. Blazak the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendment.

## CLAIM NO. 11: LACK OF COMPETENCY

At the time of trial, Mitchell Blazak had a lengthy history of severe mental illness. He also engaged in bizarre conduct in court prior to trial. Although his competency to stand trial was very much in question, the issue was not addressed by the court and no finding of competency was made.

Based upon Mitchell Blazak's incompetency and the state court's failure to make a valid finding of competency, the Due Process Clause of the Fourteenth Amendment was violated.

## CLAIM NO. 12: NON–DISCLOSURE OF INFORMATION USED AT SENTENCING

The presentence report prepared in Mitchell Blazak's case, dated December 13, 1974, contained negative information and a recommendation that capital punishment be imposed from a person whose identity was not disclosed to the defense. This same presentence report was used in resentencing on September 21, 1980.

As a result of this non-disclosure, Mr. Blazak's right to due process as guaranteed by the Fourteenth Amendment was violated.

## CLAIM NO. 13: FAILURE TO UPDATE PRESENTENCE REPORT FOR RESENTENCING

On December 17, 1974, the state court imposed sentence in Mitchell Blazak's case. The Arizona Supreme Court subsequently held that the capital punishment statue in effect at that time was invalid, and ordered that Mr. Blazak be resentenced. That resentencing occurred on September 11, 1980.

The trial court did not order nor obtain an updated presentence report despite the passage of nearly six years between the sentencing and resentencing. As a result, evidence in mitigation was not obtained.

The failure of the state court to obtain updated information prior to resentencing violated Mr. Blazak's right to due process.

At Mitchell Blazak's sentencing on December 17, 1974, the state court found aggravating factors under former A.R.S. § 13–454. The findings of aggravation included (1) Mitchell Blazak had previously been convicted of an offense punishable by life imprisonment in Pima County Superior Court, Case No. A–15829; (2) He had previously been convicted of a felony involving the use or threat of violence on another person in the same case, No. A–15829; (3) That in committing the Brown Fox homicides, he had created a grave risk of death to other persons; and (4) The Brown Fox homicides were committed in an especially cruel manner. At Mr. Blazak's resentencing on September 11, 1980, the state court made the same findings in aggravation. In addition, a finding was made that the offense was committed in expectation of the receipt of something of pecuniary value. These findings are invalid for the reasons set forth in Claim Nos. 14 through 24 below.

## CLAIM NO. 14: INVALID CONVICTIONS USED IN AGGRAVATION

At both the sentencing on December 17, 1974 and the resentencing on September 11, 1980, the state court considered Mitchell Blazak's convictions on charges of robbery and assault with intent to commit murder in Pima County Case No. A–15829 in aggravation. Both of these convictions arose from a single incident.

Due to the absence of a valid finding of competency and the existence of substantial contrary evidence, those prior convictions are invalid under the Due Process Clause of the Fourteenth Amendment. Their consideration by the state court at sentencing violated Mr. Blazak's rights to due process and to be free from cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments.

## CLAIM NO. 15: APPLICATION OF ONE EVENT AS TWO AGGRAVATING FACTORS

In imposing sentence, the trial court found two aggravating factors to exist based upon one event. Pima County Case No. A–15829 was used to reach a finding that Mitchell Blazak had previously been convicted of an offense punishable by life imprisonment and that he had previously committed a felony involving the use or threat of violence on another person.

This multiplication of aggravating factors violated Mr. Blazak's rights to due process and to be free from double jeopardy and cruel and unusual punishment under the Fifth, Eighth and Fourteenth Amendments.

Further, the state courts of Arizona have applied such aggravating factors in a freakish and arbitrary manner, thus denying Mr. Blazak's rights to due process and equal protection, as well as to be free from cruel and unusual punishment, as guaranteed by the Eighth and Fourteenth Amendments.

## CLAIM NO. 16: ABSENCE OF PRE-TRIAL NOTICE AND JURY FINDINGS OF AGGRAVATING FACTORS

The prosecution did not inform Mitchell Blazak that it intended to attempt to prove that he had prior convictions before his state trial or resentencing. No jury heard or decided the issue of whether Mitchell Blazak had been convicted of the offenses delineated in Pima County Case No. A–15829. In non-capital cases, defendants in Arizona state courts have the right to have pretrial notice of allegations of prior convictions and to have such allegations decided by a jury.

The state court's failure to provide pretrial notice of allegations of prior convictions and to provide a jury trial as to the existence of these prior convictions under these circumstances, violated Mr. Blazak's rights to due process and equal protection, as well as to be free from cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments.

## CLAIM NOS. 17–20: INVALIDITY OF PECUNIARY GAIN AGGRAVATING FACTOR

At sentencing on December 17, 1974, the state trial court found that the aggravating factor arising from the commission of the offense for pecuniary gain was inapplicable to Mitchell Blazak's case. At resentencing on September 11, 1980, the court found that aggravating factor to apply. A.R.S. § 13–454(E)(4).

This finding is invalid for the following reasons:

a. Claim No. 17—The finding that this aggravating factor was applicable after it had previously been deemed inapplicable violated the prohibition against *ex post facto* laws and to be free from double jeopardy. Article 1, Section 10, Clause 1 of the United States Constitution and the Fifth and Fourteenth Amendments were therefore violated.

b. Claim No. 18—The evidence was insufficient for a rational finding to be made that this factor was established beyond a reasonable doubt, thus violating Mr. Blazak's rights to due process and to be free from cruel and unusual punishment in contravention of the Eighth and Fourteenth Amendments.

c. Claim No. 19—This finding constituted *de facto* punishment for Mr. Blazak's exercise of his right to remain silent, thus violating the Fifth and Fourteenth Amendment.

d. Claim No. 20—No reasonable definition of this aggravating factor is provided and its application is therefore arbitrary. This statute is so vague that it violates due process under the Fourteenth Amendments.

## CLAIM NOS. 21–22: INVALIDITY OF AGGRAVATING FACTOR OF "GRAVE RISK TO OTHERS"

At sentencing, the state court found that the offenses had "created a grave risk of death to another person or persons in addition to the victim[s] of the offense," as an aggravating factor.

That finding was invalid for the following reasons:

a. Claim No. 21—The evidence was insufficient for a rational finding to be made that this factor was established beyond a reasonable doubt, thus violating Mitchell Blazak's rights to due process and to be free from cruel and unusual punishment in contravention of the Eighth and Fourteenth Amendments.

b. Claim No. 22—This aggravating factor is applied in an arbitrary and capricious manner in that it is found by the Arizona courts only if the persons facing the risk are not actually harmed. If such persons are actually injured, this aggravating factor does not apply. The application of the Arizona law in this fashion violated Mr. Blazak's rights to due process and equal protection, as well as to be free from cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments.

## CLAIM NO. 23: FAILURE TO REMAND UPON STRIKING OF AGGRAVATING FACTOR

At both the sentencing and resentencing, the state trial court found as an aggravating factor that the homicides had been committed in "an especially cruel, heinous or depraved manner," thus constituting an aggravating factor pursuant to A.R.S. § 13–434(E)(6). Following the resentencing, the Arizona Supreme Court held that the evidence did not support this finding in aggravation. That court failed, however, to remand the matter to the trial court for resentencing although it had done so in at least one other case. *State v. Blazak*, 131 Ariz. 598, 604, 643 P.2d 694 (1982).

The failure to grant a resentencing following the striking of this aggravating factor violated Mr. Blazak's rights to due process and equal protection, as well as to be free from cruel and unusual punishment, in contravention of the Eighth and Fourteenth Amendments.

## CLAIM NO. 24: INVALIDITY OF AGGRAVATING FACTORS BASED ON HEARSAY

At Mitchell Blazak's resentencing on September 11, 1980, the state court heard no testimony, but relied solely on evidence presented at the original sentencing in 1974. Under Arizona law, this prior recorded testimony was inadmissible.

By relying on inadmissible evidence, the state court violated Mr. Blazak's rights to due process of law and equal protection, as well as to be free from cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments.

## CLAIM NO. 25: STATE'S SUPPRESSION OF MITIGATING EVIDENCE

Prior to the resentencing, the prosecution refused to provide information to the defense which would have assisted in locating witnesses to testify in mitigation. As a result, those witnesses were never located and did not testify.

The state's refusal to provide such information violated Mitchell Blazak's rights to due process, to compulsory process and to be free from cruel and unusual punishment in violation of the Sixth, Eighth and Fourteenth Amendments.

## CLAIM NO. 26: FAILURE TO CONSIDER MITIGATING EVIDENCE

At the sentencing and resentencing, the state court failed to consider mitigating evidence which was available, including, but not limited to Mitchell Blazak's history of mental illness.

By failing to consider such evidence, the state court violated Mr. Blazak's rights to due process and to be free from cruel and unusual punishment in contravention of the Eighth and Fourteenth Amendments.

## CLAIM NO. 27: FAILURE TO ENUMERATE MITIGATING EVIDENCE

The state court failed to enumerate the evidence that it considered in mitigation at the sentencing and resentencing.

By failing to enumerate such evidence, the sentences were imposed in an arbitrary and capricious fashion. Further, any meaningful review was rendered impossible. In so doing, the state court violated Mitchell Blazak's rights to due process and to be free from cruel and unusual punishment in contravention of the Eighth and Fourteenth Amendments.

## CLAIM NO. 28: INEFFECTIVE ASSISTANCE OF COUNSEL

With regard to the 1974 sentencing, defense counsel failed to use reasonable diligence in investigating the existence of mitigating circumstances in presenting such evidence, instead relying largely on a continued claim of Mitchell Blazak's innocence. With regard to the 1980 resentencing, defense counsel failed to investigate or obtain mitigating evidence arising after the original sentencing.

Mitchell Blazak received ineffective assistance of counsel, and was deprived of due process and subjected to cruel and unusual punishment, all in violation of the Sixth, Eighth and Fourteenth Amendments.

## CLAIM NO. 29: BURDEN OF PROOF IN MITIGATION

The Arizona sentencing statute places the burden of proving mitigating circumstances upon the defense.

Placing this burden upon the defense violates due process and imposes cruel and unusual punishment, in contravention of the Eighth and Fourteenth Amendments to the United States Constitution.

## CLAIM NO. 30: DENIAL OF SPEEDY SENTENCING

The challenged sentences were imposed nearly six years after Mitchell Blazak was convicted of these crimes. As a result, mitigating evidence that could have been offered on behalf of Mr. Blazak was lost.

This denial of a speedy sentencing violated Mr. Blazak's rights under the Sixth and Fourteenth Amendments to the United States Constitution.

## CLAIM NO. 31: FAILURE TO CONDUCT SENTENCING IN FRONT OF A NEW JUDGE

The same judge who presided over the trial and original sentencing in 1974 conducted Mitchell Blazak's new sentencing in 1980. That judge failed to obtain a new presentence investigation report and relied solely upon his recollections of the prior proceedings.

The failure to provide a new judge for the new sentencing violated Mr. Blazak's rights under the due process clause.

## CLAIM NO. 32: LACK OF PROPORTIONALITY REVIEW

The failure of the state court to conduct a proportionality review, despite doing so in other cases, resulted in the imposition of sentence in an unfair, arbitrary and capricious manner.

Mr. Blazak's rights to due process and equal protection, as well as to be free from cruel and unusual punishment, as guaranteed by the Eighth and Fourteenth Amendments, were therefore violated.

## CLAIM NO. 33: ABSENCE OF LESSER INCLUDED OFFENSE INSTRUCTION

Prior to deliberations at trial, the jury was instructed only on the law in connection with the charge of first degree murder, not the lesser included offense of second degree murder.

The imposition of capital punishment following the failure to provide such an instruction violated Mr. Blazak's rights under the Eighth and Fourteenth Amendments.

## CLAIM NO. 34: DENIAL OF SENTENCING BY JURY

Mitchell Blazak was sentenced by the court. The denial of the sentencing jury deprived Mr. Blazak of his Sixth, Eighth and Fourteenth Amendment rights.

## CLAIM NO. 35: ABSENCE OF BURDEN OR STANDARDS

The Arizona capital sentencing statute fails to place the burden of establishing that aggravating factors outweigh mitigating factors on the prosecution and fails to

set forth any standard to be applied to this issue.

The Arizona statute is therefore invalid as violating Mitchell Blazak's rights to due process and to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments.

CLAIM NO. 36: MANDATORY IMPOSITION OF CAPITAL PUNISHMENT

The Arizona statute requires that capital punishment be imposed upon a finding of one or more aggravating factors that are not outweighed by mitigating factors.

The absence of the discretion to impose a sentence other than death violated Mitchell Blazak's rights to due process and to be free from cruel and unusual punishment in contravention of the Eighth and Fourteenth Amendments.

CLAIM NO. 37: RETROACTIVE APPLICATION OF SENTENCING STATUTE

The Arizona capital sentencing statute in effect at the time of commission of the underlying offenses was subsequently held to be invalid by the Arizona Supreme Court. As a result, the state court imposed sentence based upon a statute passed in 1978 to offenses committed in 1973.

Such retroactive application of the law violated Mitchell Blazak's rights to be free from the application of *ex post facto* laws, to due process and to be from cruel and unusual punishment in contravention of Article 1, Section 10, Clause 1 of the Constitution, as well as the Eighth and Fourteenth Amendments.