643 P.2d 694

STATE of Arizona, Appellee,

v.

**Mitchell Thomas BLAZAK, Appellant.**

No. 3099.

Supreme Court of Arizona,
In Banc.

March 11, 1982.

Rehearing Denied April 20, 1982.

Robert K. Corbin, Atty. Gen., by William J. Schafer, III, Jessica Gifford, Crane McClennen, Asst. Attys. Gen., Phoenix, for appellee.

Higgins & Sinema, P. C. by Thomas E. Higgins, Jr., Tucson, for appellant.

CAMERON, Justice.

On 20 November 1974, Mitchell Thomas Blazak was convicted on two counts of first degree murder, one count of assault with intent to commit murder, and one count of attempted armed robbery. He was sentenced to death and the conviction and sentence were affirmed by this court on 20 January 1977. See *State v. Blazak*, 114 Ariz. 199, 560 P.2d 54 (1977). On 6 December 1979, this court ordered resentencing pursuant to *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), cert. denied 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478. Defendant was resentenced to death on 11 September ber 1980 and appealed. Defendant also unsuccessfully sought post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure, 17 A.R.S. We have original appellate jurisdiction pursuant to A.R.S. § 13–4031. We affirm.

We must answer the following questions on appeal:

1. Did resentencing pursuant to *State v. Watson*, supra, violate:
   a. the ex post facto prohibition of the United States and Arizona Constitutions,
   b. double jeopardy,
   c. the due process clause of the United States and Arizona Constitutions, and
   d. separation of powers?
2. Did the delay in resentencing violate defendant's Sixth Amendment right to speedy trial?
3. Did the State's failure to charge defendant under the sentencing statute, A.R.S. § 13–454, deprive him of adequate notice of the nature and cause of the accusation?
4. Is Arizona's death penalty statute unconstitutional?
   a. Does Arizona's death penalty scheme constitute cruel and unusual punishment?
   b. Does the imposition of the death penalty in a felony murder case constitute cruel and unusual punishment?
   c. Is the death penalty imposable only by a jury?
   d. Does it violate due process to place the burden of proving mitigating circumstances on the defendant?
   e. Has the Arizona death penalty been applied in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution?
5. Was defendant's Rule 32 motion for post-conviction relief properly denied?
6. Was due process violated by the prosecution's failure to reveal the whereabouts of certain witnesses for the sentencing hearing?

7. Was the death penalty properly imposed?

The defendant's convictions are based on the following facts. Shortly after midnight on 15 December 1973, defendant Mitchell Thomas Blazak, armed and wearing a ski mask, attempted to rob the bartender of the Brown Fox Tavern in north Tucson, Arizona. When the bartender refused to surrender his money, Blazak fatally shot him and a patron sitting nearby. A third person was wounded. Blazak and an accomplice fled. A ski mask found along the likely escape route contained hairs which were identified as Blazak's. It was shown that the shells which were found in the bar could have come from Blazak's gun. The accomplice, testifying in exchange for a grant of immunity, identified Blazak as the gunman. His testimony was corroborated by physical and testimonial evidence. Following affirmance of Blazak's conviction, the case was remanded for resentencing pursuant to Watson, supra. At resentencing, the trial court found the following aggravating circumstances:

A.R.S. § 13–454(E)

(1) Conviction of another offense for which life imprisonment was imposable;

(2) Previous conviction of a felony involving use or threat of violence on another person;

(3) In the commission of this offense, defendant knowingly created a grave risk of danger to another person or persons in addition to the victims of the offense;

(5) The defendant committed the offense in expectation of the receipt of something of pecuniary value;

(6) The defendant committed the offense in an especially cruel and depraved manner.

Pursuant to A.R.S. § 13–454(F), the trial court found no mitigating circumstances sufficiently substantial to call for leniency and sentenced defendant to death. Defendant appeals.

## WATSON CHALLENGES

Defendant first challenges the constitutionality of his resentencing under the mandate of State v. Watson, supra. Specifically defendant contends that Watson, supra, violates the prohibition against ex post facto laws found in Art. I, § 10 of the United States Constitution and Art. 2, § 25 of the Arizona Constitution. He argues that it also violates the Fifth Amendment prohibition against double jeopardy, and is judicial legislation and violative of the due process clause of the Fourteenth Amendment, or the separation of powers mandated by Art. 3 of the Arizona Constitution and Art. IV, § 4 of the United States Constitution. We have previously considered these challenges to Watson, supra, and have consistently rejected them. See State v. Watson, supra; State v. Greenawalt, 128 Ariz. 150, 624 P.2d 828 (1981); State v. Bishop, 127 Ariz. 531, 622 P.2d 478 (1980). See also Knapp v. Cardwell, 667 F.2d 1253 (9th Cir., 1982) in effect upholding our decision in Watson, supra. We find no error in defendant's resentencing pursuant to Watson, supra.

## SPEEDY TRIAL

The defendant was first sentenced to death on 17 December 1974. After the judgment was affirmed on appeal, the case was remanded pursuant to this court's decision in Watson, supra, and the defendant was again sentenced to death on 11 September 1980. Defendant argues that the delay of more than 5 years denied him due process and a speedy trial as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution. He alleges that the oppression of being twice sentenced to death and the prejudice inherent in attempting to present evidence of mitigating factors years after the crime was committed require that the sentence of death be overturned. We do not agree.

■ Neither this court nor the United States Supreme Court has found that the right to a speedy trial extends to sentencing. State v. Steelman, 126 Ariz. 19, 612 P.2d 475 (1980). Neither are we able to find that the defendant was prejudiced by

the delay. All mitigating factors presented at the previous sentencing hearing were considered at the second sentencing, as well as new factors presented by the defendant. *State v. Watson*, 129 Ariz. 60, 628 P.2d 943 (1981). Also, the defendant has been unable to suggest any other mitigating factors which could not be shown by reason of this delay. We do not believe that the delay in resentencing resulted in prejudice to the defendant.

## NOTICE

Defendant was charged in the indictment as follows:

"COUNT ONE (MURDER, First Degree)

"On or about the 15th day of December, 1973, MITCHELL THOMAS BLAZAK murdered ELDEN PATRICK BAKER, all in violation of A.R.S. § 13–451, § 13–452 and § 13–453.

"COUNT TWO (MURDER, First Degree)

"On or about the 15th day of December 1973, MITCHELL THOMAS BLAZAK murdered JOHN T. GRIMM, all in violation of A.R.S. § 13–451, § 13–452 and § 13–453."

A.R.S. §§ 13–451, 13–452, and 13–453, in effect at the time, defined murder and malice aforethought (§ 13–451); degrees of murder (§ 13–452); and punishment (§ 13–453). A.R.S. § 13–454 is a special provision which provides the procedure for sentencing in death penalty cases. This section was not cited in the indictment.

■ Defendant claims that the State's failure to charge him under A.R.S. § 13–454 constitutes inadequate notice that the death sentence might be imposed. We do not agree. The nature of an indictment is set out in Rule 13.2, Arizona Rules of Criminal Procedure, 17 A.R.S.:

"a. In General. The indictment or information shall be a plain, concise statement of the facts sufficiently definite to inform the defendant of the offense charged.

"b. Charging the Offense. The indictment or information shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged to have violated.

"c. Notice of Necessarily Included Offenses. Specification of an offense in an indictment or information shall constitute a charge of that offense and of all offenses necessarily included therein."

Due process requires that a defendant be advised of the specific charges against him, and an indictment sufficient on its face fulfills this requirement. *State v. Henry*, 114 Ariz. 494, 562 P.2d 374 (1977).

■ We believe that the indictment was sufficient on its face to inform the defendant not only of the crime of which he was charged, but the sentence he was facing. Rule 13.2 requires that the State inform the defendant only of the offense charged. It does not require the State to cite the sentencing statute, and failure to do so in the indictment does not render it invalid. We believe that the defendant had adequate notice of the crimes charged and the sentences that could be imposed if found guilty of any of the degrees of murder embraced by the statutes cited. We find no error.

## IS THE DEATH PENALTY UNCONSTITUTIONAL?

a. Cruel and unusual punishment

■ Defendant next asserts that the death penalty constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments of the United States Constitution and Art. 2, § 15 of the Arizona Constitution. As long as the death penalty is not imposed in an arbitrary and capricious manner, it is not unconstitutional by federal or state standards. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). We have held that the death sentence is not cruel and unusual, and that the Arizona system of sentencing does not result in arbitrary and capricious imposition of the death penalty. *State v. Blazak*, supra; *State v. Jordan*, 126 Ariz. 283, 614 P.2d 825 (1980), cert. denied 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251.

b. Felony murder

█ Defendant contends further that imposition of the death penalty in a felony murder case constitutes cruel and unusual punishment. We might be sympathetic if, for example, defendant in the instant case had been outside the bar waiting behind the wheel of an automobile in which the parties were to escape and defendant did not contemplate that deadly force would be used by others engaged in the robbery. That is not the case herein. The shooting was intentional and was done by the defendant. The death penalty is not excessive or disproportionate to the offense in this type of situation. *State v. Jordan,* supra; *State v. Greenawalt,* supra; *Lockett v. Ohio,* supra.

c. Jury requirement

Defendant argues that the death penalty may be imposed only by a jury. We considered and rejected this argument in *State v. Watson,* supra. See also *Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

d. Burden of mitigating circumstances

Defendant also claims that he should not have the burden of proving the mitigating circumstances. We do not agree. We have held that placing the burden of showing mitigating circumstances on the defendant does not violate due process. *State v. Smith,* 125 Ariz. 412, 610 P.2d 46 (1980); *State v. Greenawalt,* supra.

e. Equal protection

Pointing to the fact that no women have been sentenced to death, the defendant urges that the death penalty is applied in a sexually discriminatory manner, in violation of the equal protection clause of the Fourteenth Amendment. The sentencing scheme set out in A.R.S. §§ 13–453 and 13–454 makes no distinction on the basis of sex. Nor is there evidence to support the argument that it is applied in a discriminatory manner. In *State v. Holsinger,* 115 Ariz. 89, 563 P.2d 888 (1977), cited to us by the defense, the female defendant was properly sentenced to life imprisonment because her participation in the murder was minor and there were sufficiently substantial mitigating factors to outweigh the aggravating circumstance. That her co-defendant and husband, whose participation was more involved, received the death penalty, does not make the imposition of the death penalty discriminatory in application. We find no error.

## POST–CONVICTION PROCEDURES

On 11 April 1978, in response to a petition for special action filed in this court, we ordered that the matters raised in said petition as well as "any other matters which would be proper" be considered pursuant to Rule 32, Arizona Rules of Criminal Procedure, 17 A.R.S. This matter was heard by the Superior Court and relief denied. Defendant's petition to this court for review was denied on 20 November 1979. Defendant in this appeal again raises matters previously considered and disposed of by the trial court and this court on review of defendant's Rule 32 hearing.

█ The decision of the appellate court to grant or not grant review is not reviewable by appeal. Rule 32.9, Arizona Rules of Criminal Procedure, 17 A.R.S.; *State v. Stice,* 23 Ariz.App. 97, 530 P.2d 1130 (1975); *State v. Morrow,* 111 Ariz. 268, 528 P.2d 612 (1974). But defendant contends that he is not seeking review of his Rule 32 hearing to determine innocence or guilt, but for the purpose of our reviewing the imposition of the death penalty. Defendant urges that he may present anything in mitigation, and since we have the obligation to search the record in order to make an independent determination as to whether the death sentence should be imposed, we must consider the record of the Rule 32 hearing in making our decision as to the sentence. We have stated:

"* * * the gravity of the death penalty requires that we painstakingly examine the record to determine whether it has been erroneously imposed (citation omitted). Furthermore, because A.R.S. § 13–454 sets out the factors which must

be found and considered by the sentencing court, we necessarily undertake an independent review of the facts that establish the presence or absence of aggravating and mitigating circumstances (citations omitted). We must determine ourselves if the latter outweigh the former when we find both to be present." *State v. Richmond*, 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976).

The record made on the Rule 32 petition and hearing is part of the record before this court. Accordingly, we have reviewed the record in the Rule 32 petition and hearing in considering whether the death penalty must be imposed. We note, however, that both at the Rule 32 hearing on 21 June 1977 and again at the Rule 32 hearing on 8 February 1979, the trial court found that nothing had been presented at these hearings which would have "affected the outcome of the trial insofar as the verdict was concerned and insofar as the sentence was concerned." From our review of the record, we reach the same conclusion.

## DID THE PROSECUTION SUPPRESS EVIDENCE?

On 6 December 1979, we ordered the defendant be resentenced pursuant to *State v. Watson*, supra. The trial court set 8 January 1980 as the date of sentencing. Thereafter, there were numerous motions for delay made by the defendant in order that witnesses could be found to assist in the hearing in mitigation, and at defendant's request, funds were made available to defendant for an investigator. Working on behalf of the defendant, the investigator approached the county attorney seeking information on the whereabouts of several persons. From these prospective witnesses, defendant sought testimony that would mitigate in his favor. The county attorney told the investigator that he had no information about two of the persons, but that several of the other named individuals could probably be located on the horse racing circuit. Regarding the remaining individual, defendant's wife Sandy Blazak, the county attorney refused to divulge her whereabouts because of her interest in privacy. A partial sentencing hearing was held in April and then continued in order for defendant to locate mitigation witnesses. Finally the matter was heard on 11 September 1980.

Defendant again asked for a continuance in order to continue the search for witnesses which would be favorable to him in the mitigation hearing. At this time, the following transpired between the county attorney and the defendant's investigator:

"Q   Do you know Rex Angeley, the fellow sitting next to me here?

"A   I have met him, talked to him.

"Q   Okay, did you ever try to contact him to see if he had any indication of where Mrs. Bennett is located?

"A   I wasn't sure he was involved in the case.

"Q   Okay, did you ever contact anyone from the County Attorney's Office, not just Rex; but make any kind of inquiry to see if any assistance from our side of things would be forthcoming in locating people?

"A   Well, first of all I would have considered that improper. And second of all I wouldn't have done it without direction from Mr. Higgins.

"Q   So I assume you didn't make any contact like that?

"A   Absolutely not."

The court, in denying the motion for continuance, stated:

" * * * the record may show that the request for recess is denied. The reason I'm denying it is because you're at this time you're not even in a position to know if once you locate these people if they'd by of any value to you. And if it later turns out that you have them located, and that you do find something that would have something that you feel would be of value, then I think that matter could always be raised on further proceedings, such as Rule 32 proceedings, or something like that."

Defendant was then sentenced to death.

■ After sentencing, the defendant filed two affidavits which inferred that the

county attorney had refused to cooperate with the defendant's investigator in seeking information and had also suppressed evidence which would have been helpful to the defendant at the resentencing. The defendant now urges on appeal that this refusal by the county attorney to provide information and cooperation constitutes a wilful suppression of exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Rule 32.1 states:

"Rule 32.1 Scope of remedy

"Subject to the limitations of Rule 32.2, any person who has been convicted of, or sentenced for, a criminal offense may, without payment of any fee, institute a proceeding to secure appropriate relief on the ground or grounds that:

\* \* \* \* \* \*

e. Newly-discovered material facts exist, which the court, after considering.

(1) The probability that such facts, if introduced would have changed the verdict, finding or sentence;

\* \* \* \* \* \*

"may require that the conviction or sentence be vacated." Rule 32.1(e)(1), Arizona Rules of Criminal Procedure, 17 A.R.S. We agree with the trial judge that the more appropriate method of bringing these matters to the trial court and eventually this court would be by way of a Rule 32 petition. The alleged misconduct of the county attorney and the extent of that alleged misconduct is better shown at a proper post-conviction hearing, at which time evidence may be taken to show the truth or falsity of defendant's allegations. In any event, we cannot decide this matter based upon post-sentencing affidavits or motions.

### WAS THE DEATH SENTENCE PROPERLY IMPOSED?

The court, at the sentencing, found the five aggravating circumstances stated above as required by A.R.S. § 13–454, and found that there were "no mitigating circumstances sufficiently substantial to call for leniency." Defendant was then sentenced to death.

As noted above, we must make an independent review of the record to determine the absence or existence of both aggravating and mitigating circumstances. From that independent review, we disagree with the finding by the trial court that the murder was committed in an especially cruel and depraved manner. As we have stated:

"As was true in *Watson* and *Brookover*, we do not, in this case, find the killing to be set apart from the normal first degree murder. The trial judge relied on the following factors: the helplessness of the victim; the lack of necessity for the killing to accomplish the defendant's plan to steal; and the magnitude of the wound inflicted demonstrating a clear intent to kill. We agree with the trial court that these factors existed, but we do not agree that they indicate that the killing was accomplished in an especially heinous or depraved manner." *State v. Lujan*, 124 Ariz. 365, 372–73, 604 P.2d 629, 636–37 (1979). See also *State v. Brookover*, 124 Ariz. 38, 601 P.2d 1322 (1979).

The legislature has made it clear that the death penalty is not to be imposed in every case of first degree murder. The death penalty is reserved for those cases where the manner in which the crime was committed raises it above the norm of first degree murders, or the background of the defendant places the defendant above the norm of first degree murderers. Usually, a murder which is cruel, heinous or depraved, as defined by our cases, will raise a crime above the norm of first degree murders, and a defendant with a prior record of serious criminal activity or crimes involving violence to others indicates that the defendant is above the norm of first degree murderers.

Even though we do not believe the shooting in the instant case was cruel, heinous or depraved, it does not follow that the death penalty cannot be imposed. Even in the absence of this aggravating circumstance, there are still enough aggravating circumstances that cannot be overcome by the mitigating circumstances. The fact

that the murder was one for pecuniary gain and involved a grave risk to the others in the bar at the time of the shooting, takes the murder out of the norm of first degree murders. The prior record of the defendant takes the defendant out of the norm of first degree murderers. The death penalty is appropriate under the facts in this case.

The judgment of guilt has been previously affirmed in the matter of *State v. Blazak*, supra. The sentence of death is affirmed.

HOLOHAN, C. J., and HAYS and FELDMAN, JJ., concur.

GORDON, Vice Chief Justice (specially concurring):

I must specially concur in the opinion of the majority. So that my assent in the result will not be construed as abandoning my belief as to the correct interpretation of what is now A.R.S. § 13–703(F)(5) (formerly A.R.S. § 13–454(E)(5)), I reiterate my disagreement with the majority's interpretation of the aggravating circumstance concerning pecuniary gain for the reasons I stated in my dissent in *State v. Clark*, 126 Ariz. 428, 616 P.2d 888 (1980). Because other aggravating circumstances were proved, however, and because there are not mitigating circumstances sufficiently substantial to call for leniency, I agree with the result reached by the majority as to the imposition of the death penalty.

CAMERON, Justice.

A word of explanation. I joined with Justice Gordon in his dissent in *Clark*, supra, and although I have authored the majority opinion, I still adhere to the dissent in *Clark*, supra.