Mitchell Thomas **BLAZAK**, Petitioner–Appellee–Cross–Appellant,

v.

James R. **RICKETTS**, Donald Wawrzaszek, Respondents–Appellants–Cross–Appellees.

Nos. 91–16549, 91–16562.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 16, 1992.

Decided Aug. 2, 1993.

Robert Bartels, Arizona State University College of Law, Tempe, AZ, for petitioner-appellee-cross-appellant.

Natman Schaye, Tucson, AZ, for petitioner-appellee-cross-appellant.

R. Wayne Ford, Asst. Atty. Gen., Phoenix, AZ, for respondents-appellants-cross-appellees.

Before: TANG, BEEZER and BRUNETTI, Circuit Judges.

TANG, Circuit Judge.

This is an appeal by officials of the State of Arizona (hereinafter, "the State") from the grant of habeas corpus to Mitchell Thomas Blazak pursuant to 28 U.S.C. § 2254. The district court granted relief on Blazak's claim that his due process rights were violated by the state trial court's failure to determine his competency to stand trial. Blazak cross-appeals the denial of relief as to the remaining challenges to his convictions. These include claims that (1) there was insufficient evidence to sustain his conviction, (2) the accomplice testimony was not corroborated, (3) certain evidence introduced at trial had no probative value, (4) new evidence had been discovered which would likely lead to an acquittal, (5) the State failed to disclose that its key witness (the accomplice) had been released from custody during jury deliberations, (6) Blazak was denied effective assistance of counsel at trial, and (7) Blazak was absent during critical pretrial proceedings.

Because we are evenly divided on whether Blazak's due process rights were violated by

the failure to determine his competency to stand trial, the judgment of the district court will stand affirmed. *See United States v. Zolin*, 491 U.S. 554, 561, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989).

## BACKGROUND

On December 15, 1973, two men entered the Brown Fox Tavern in Tucson, Arizona. When the bartender refused to hand over any money, one of the men, wearing a ski mask, shot the bartender four times, killing him. The assailant also shot two bar patrons, killing one and seriously injuring the other. The two men fled by automobile.

Blazak was convicted on November 20, 1974, of two counts of first degree murder, one count of assault with intent to commit murder and one count of attempted armed robbery. He was sentenced to death on the two counts of murder, to incarceration for a period of not less than eighty years nor more than life on the count of assault with intent to commit murder, and to incarceration for a period of not less than twenty years nor more than thirty years on the attempted armed robbery count.

Blazak appealed his convictions and sentence, which were affirmed. *State v. Blazak*, 114 Ariz. 199, 560 P.2d 54, 61 (1977). The Arizona Supreme Court subsequently ordered resentencing pursuant to *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (the death penalty statute is unconstitutional insofar as it limits the right of defendants to show all mitigating circumstances), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), and Blazak was resentenced to death on September 11, 1980. *State v. Blazak*, 131 Ariz. 598, 643 P.2d 694, 695, *cert. denied*, 459 U.S. 882, 103 S.Ct. 184, 74 L.Ed.2d 149 (1982). Blazak's convictions and sentence were again affirmed, and he unsuccessfully sought post-conviction relief in the Arizona courts. *Id.*, 643 P.2d at 701.

Blazak then filed a petition for writ of habeas corpus in federal district court, and was twice allowed to amend his petition.

Blazak's second amended petition contained 37 claims for relief, eleven of which challenged his convictions, and the remaining challenging his death sentence. The district court granted relief as to the convictions and therefore did not consider Blazak's challenges to his sentence. We considered *sua sponte* whether this court had jurisdiction over the appeal. We found that the grant of habeas corpus was a final judgment ripe for immediate review. *Blazak v. Ricketts*, 971 F.2d 1408, 1409, 1412 (9th Cir.1992). Judge Beezer dissented, arguing that a final judgment did not exist, *id.* at 1418 (Beezer, J., dissenting), and accordingly expresses no view on the merits here.

■ As to the merits of the appeal, a district court's decision on a petition for writ of habeas corpus is reviewed *de novo*. *Lincoln v. Sunn*, 807 F.2d 805, 808 (9th Cir. 1987).

## DISCUSSION

### I.

■ When Blazak was tried in 1974, it was a violation of due process to prosecute a defendant who was incompetent to stand trial, or to fail to conduct an evidentiary hearing where evidence before the trial court raised a "bona fide doubt"[1] about the defendant's competency to stand trial. *Pate v. Robinson*, 383 U.S. 375, 378, 385, 86 S.Ct. 836, 838, 842, 15 L.Ed.2d 815 (1966); *Moore v. United States*, 464 F.2d 663, 666 (9th Cir.1972). This basic doctrine has not changed since 1974. *See Medina v. California*, — U.S. —, —, —, 112 S.Ct. 2572, 2574, 2581, 120 L.Ed.2d 353 (1992).

The State of Arizona, in accord with due process requirements, prohibits the prosecution of a defendant who is not competent to stand trial. *See* Ariz.R.Crim.P. 11.1 (1992) ("A person shall not be tried, convicted, sentenced or punished for a public offense while, as a result of a mental illness or defect, he is unable to understand the proceedings against

1. A "bona fide doubt" has also been expressed as "sufficient doubt," "good faith doubt," "genuine doubt," "reasonable doubt," and "substantial question"; these all describe the same constitu-

tional standard. *Chavez v. United States*, 656 F.2d 512, 516 n. 1 (9th Cir.1981) (collecting cases).

him or to assist in his own defense."); Ariz. R.Crim.P. 11.3(a) (1992) ("If the court determines that reasonable grounds for an examination exist, it shall appoint at least two mental health experts ... to examine the defendant...."); Ariz.R.Crim.P. 11.5 (1992) (hearing required to determine competency after examinations completed).[2]

■ A defendant is competent if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). *See also Godinez v. Moran*, —— U.S. ——, ——, 113 S.Ct. 2680, 2686, 125 L.Ed.2d 321 (1993).

The district court concluded after an evidentiary hearing that Blazak's right to due process was violated by the state court's failure to address Blazak's competency prior to trial. The district court found:

> At the time of his trial, Petitioner had a history of mental illness and had been found to be incompetent to stand trial in a[n] unrelated case several years earlier. At the [district court] evidentiary hearing, Psychologist Joseph Geffen testified that Petitioner should have been given a competency hearing before the trial. *See* Transcript of July 31, 1991 Hearing, p. 21. Howard Kashman, Petitioner's attorney at the trial, testified that, had he known of Petitioner's history of mental illness, he would have requested a competency hearing. *See id.* at 90. Medical records indicate that Petitioner had been hospitalized for mental illness several years before the trial, and that he had been diagnosed with several mental illnesses. All of this evidence indicates to this Court that there

were reasonable grounds to question Petitioner's competency at the time of trial.

■ The State argues that none of this evidence was before the state trial court at the time of trial and thus cannot support the district court's finding that there was reasonable doubt regarding Blazak's competency. Blazak argues that the evidence, in addition to that cited by the district court, supports the conclusion that a competency hearing was required.[3]

## II.

■ Prior to the 1974 convictions challenged in these proceedings, Blazak had a documented history of mental illness. In a previous prosecution Blazak had been found incompetent in Pima County Superior Court, on three separate occasions, although he was eventually declared competent to stand trial. *See State v. Blazak*, 105 Ariz. 216, 462 P.2d 84, 84–85 (1969); *State v. Blazak*, 110 Ariz. 202, 516 P.2d 575, 576 (1973).

Blazak had been charged in April of 1967 with robbery and assault with intent to commit murder. After a nine day hunger strike by Blazak in jail, Blazak's attorney requested the court to conduct a competency hearing. On June 14, 1967, the first competency hearing was held. The court found that Blazak was not competent to stand trial and committed him to the Arizona State Hospital. The State Hospital discharged him on July 19, 1967. In a second competency hearing held on August 22, 1967, the court again held Blazak incompetent to stand trial and committed him to the State Hospital; Blazak was then again later discharged. The third competency hearing was held on October 16, 1967, and the court again held Blazak incompetent. Blazak was again committed to the State Hospital and released again shortly thereafter. *Blazak*, 462 P.2d at 84–85.

---

**2.** These rules have remained unchanged since 1973.

**3.** Blazak also claims that he was *actually* incompetent to stand trial. The district court concluded that since over seventeen years had expired since the trial, it would be impossible to determine Blazak's actual competency retrospectively. This was supported by Dr. Geffen's testimony at the evidentiary hearing that it was not possible to

determine retrospectively whether Blazak was actually competent in 1974.

When a petitioner establishes that the evidence before the state trial court raised a bona fide doubt as to his competency, a further inquiry into his actual competency is not necessary due to the difficulties in making retrospective competency determinations. *Drope v. Missouri*, 420 U.S. 162, 183, 95 S.Ct. 896, 909, 43 L.Ed.2d 103 (1975).

The commitments by the court and the subsequent discharges from the State Hospital seem to have been primarily a result of different diagnoses between Dr. Harrison Baker at the Arizona State Hospital and Dr. Willard Shankel of Pima County General Hospital. Dr. Shankel was of the opinion that Blazak was psychotic and suffered from "schizophrenic reaction, paranoid type." Dr. Shankel concluded that Blazak was unable to fully understand the charges against him and was unable to cooperate in his defense. Dr. Baker of the State Hospital, on the other hand, concluded that Blazak was a sociopathic personality with a possible symptomatic drug reaction from LSD, but that there was no evidence that Blazak was psychotic. Dr. Baker opined that Blazak was deliberately feigning mental illness, and that he was competent to stand trial. Drs. Pierce and Willis, also of the State Hospital, agreed with Dr. Baker's diagnosis and concluded that Blazak was competent to stand trial.

On April 24, 1968, after Blazak's third discharge from the State Hospital, Blazak waived any further competency hearing. He then pleaded guilty to both crimes and proceeded to trial on an insanity defense before a judge without a jury; the judge found him sane. The Arizona Supreme Court reversed the convictions, holding that the trial court erroneously placed the burden of proving insanity on the defendant and that Blazak's waiver of a fourth competency hearing should not have been accepted. *Blazak*, 462 P.2d at 85–87.

On remand from the Arizona Supreme Court, a fourth competency hearing was held before Judge Richard Roylston. Dr. Baker again reported that Blazak was competent to stand trial. Dr. Shankel was still of the opinion that Blazak suffered from paranoid schizophrenia, and stated that eight other psychiatrists had examined Blazak and agreed with this diagnosis. Dr. Shankel now felt, however, that the schizophrenia was in remission, and that Blazak was thus competent to stand trial. A third doctor, Dr. Bennett, testified before Judge Roylston that Blazak understood the charges against him, but that his paranoid illness would "make it difficult for him, if not impossible, to understand the advice and cooperate with ... his attorney." On March 30, 1970, based on the preceding, the court ruled that Blazak had been competent on April 24, 1968 and thus could not withdraw his guilty plea, and that Blazak was now competent to stand trial on his insanity defense. Blazak then went to trial before a jury on his insanity defense, and was again unsuccessful. The Arizona Supreme Court affirmed the convictions. *Blazak*, 516 P.2d at 578.

Four years later, Blazak was tried for the Brown Fox Tavern murders before Judge Richard Roylston, the same judge who had conducted the final competency hearing regarding the previous charges.[4] Blazak was represented by Howard Kashman, who was not aware of Blazak's history of mental illness or the previous commitments to the State Hospital. Kashman did not request a competency hearing prior to trial.

The December 15, 1974 Presentence Report concluded that Blazak exhibited behavior "characteristic of many psychopaths." The Presentence Report also contained synopses of the mental evaluations from 1967 and 1968 as follows:

In connection with the defendant's previous sentencings in 1967 and 1968 he received six mental and personality evaluations:

On June 2, 1967[,] William L. Shankel, psychiatrist, concluded, "There is no question in my mind as to this man's mental illness. In addition, I see him as highly dangerous and it is a wonder that he has not killed someone previously. He will need a long period of mental hospitalization on a maximum security ward, and we can perhaps arrange this through a Rule 250 Hearing." [5]

---

4. The State argues that Judge Robert Roylston (Judge Richard Roylston's twin) conducted the final competency hearing. However, the minute entry from the hearing carries Judge Richard Roylston's signature.

5. Ariz.R.Crim.P. 250(A), provided, in relevant part:

If before or during the trial the court has reasonable ground to believe that the defendant, against whom an indictment has been found or information filed, is insane or mental-

On September 12, 1967[,] K.K. Pierce, Phd., psychologist observed, "He exhibits no anxiety and is co-operative at all times." Pierce wrote [sic] test findings were, "This patient possesses weak integrative and analytic abilities. His thinking is primitive. His control over his aggressive impulses is poor. Some anxiety is present. No signs of psychosis are evident." The diagnostic impression was, "sociopathic personality disturbance, anti-social reaction."

On November 20, 1967, Pierce added to his report, "The patient is obviously capable of assisting his attorney in his own defense and obviously understands the nature of the charges against him."

On September 18, 1967[,] Harrison M. Baker, psychologist, diagnosed the defendant as, "sociopathic personality, anti-social type." Continuing, he added[,] "This man represents a sociopathic personality who is deliberately manipulating and feigning mental illness in an attempt to avoid legal consequences.... he does not have a mental illness.... this man is considered competent and able to stand trial."

On November 3, 1967[,] Harper F. Willis, Jr., psychiatrist, gave the following diagnostic impression, "sociopathic personality, anti-social type. Secondary diagnosis L.S.D. psychosis.... I feel this man is considered competent and able to stand trial."

On December 6, 1967[,] Kent E. Durfee, psychologist felt that he could not rule on the defendant's sanity but reported, "I feel that Mr. Blazak is an extremely dangerous person who should not be free in society until some major psychological changes take place."

On February 5, 1968, Dr. Baker, Arizona State Hospital, saw the defendant again and concluded that the prognosis for the defendant's modification for changes in social behavior was poor. Baker considered the defendant "highly dangerous in an unstructured setting."

The 1974 Presentence Report also attached presentence reports from his prior convictions. The December 8, 1971 Presentence Report stated, "Dr. Russell of the Southern Arizona Mental Health Walk-in Clinic was consulted concerning the defendant.... Dr. Russell said that based on all the previous psychiatric reports the defendant is a psychopath."

The July 29, 1968 Presentence Report states,

[Blazak] had three separate Rule 250 Hearings. The respective state hospital commitments [which] resulted from these hearings lasted from June 14, 1967 to July 25; from August 25, 1967, to September 18, 1967; and, from October 16, to February 5, 1968. Attached are four state hospital reports covering these three sojourns at the Arizona State Hospital, two of them being for the last period.

....

Dr. Shankel, in the attached report dated June 2, 1967, opined that Blazak is "highly dangerous." In a report dated February 5, 1968, Dr. Harrison Baker of the State Hospital staff concurred with Dr. Shankel when he said prognosis is, "Poor for modification of social behavior ... regarded as highly dangerous in an unstructured situation."

... during the interim there may be an important breakthrough in the treatment of mental illness, which might be to his advantage.

Most significantly, Dr. Shankel's June 2, 1967 report (attached to the 1968 Presentence Report) was given to the trial court for the 1974 sentencing. That report states:

The diagnostic impression is in this case one of a chronic, undifferentiated schizophrenic reaction, with many paranoid elements. In my opinion, this man is at this time psychotic, and I feel that he was psychotic at the time of the alleged crime. My belief is that his mental illness is of such nature and severity that he was at

ly defective, to the extent that he is unable to understand the proceedings against him or to assist in his defense, the court shall immediately set a time for a hearing to determine the defendant's mental condition.

This rule was superseded by Rule 11, Ariz. R.Crim.P., in 1973.

the time of the alleged crime unable to understand the nature and consequences of his acts, unable to know right from wrong, and unable to adhere to the right. In addition, *I believe that he is at this time, because of his mental illness, unable to understand fully the nature of the charges against him, and unable to cooperate intelligently in his own defense.*

(Emphasis added).

■ The Presentence Report and its attachments brought Blazak's history of mental illness and the previous competency adjudications directly before the state trial court. Evidence of past incompetency is relevant in determining present competency to stand trial. *See United States v. Caplan,* 633 F.2d 534, 539 (9th Cir.1980).

The evidence before the state trial court was similar to evidence which we have previously found creates a "bona fide doubt" of competency to stand trial. In *Moore,* we held that the defendant's due process rights had been violated by a court's failure to hold a competency hearing, where records before the court indicated an extensive history of mental illness, even though a current psychiatric report concluded that the defendant was competent. *Moore,* 464 F.2d at 665–66. Similarly, here, the state trial court had records explaining Blazak's history of mental illness and previous competency adjudications. Moreover, unlike *Moore,* there was no finding of competency at the time of Blazak's trial.

In *Morris v. United States,* 414 F.2d 258, 259 (9th Cir.1969), we held that "sufficient doubt" of competency was raised by the presentence report which disclosed a history of mental illness and a prior finding of insanity, although the defendant had apparently since recovered his sanity. In *Rhay v. White,* 385 F.2d 883, 884 (9th Cir.1967), we found that testimony at trial regarding the defendant's "history of chronic mental disturbances, paranoid traits, violent behavioral explosions and previous institutional diagnoses" should have compelled a competency hearing. In that case, defendant's counsel had informed the trial judge that the defendant "was very close to a psychotic break." *Id.* at 885.

In contrast, we held in *Steinsvik v. Vinzant,* 640 F.2d 949, 952 (9th Cir.1981), that a defendant's statement that he was a "little confused" prior to the entry of his plea was not sufficient to raise a bona fide doubt. In *de Kaplany v. Enomoto,* 540 F.2d 975, 977 (9th Cir.) (en banc), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977), the defendant asserted an insanity defense and was examined prior to trial by three psychiatrists, all of whom were of the opinion that the defendant was sane at the time of the crime and presently sane and able to cooperate with his counsel. During the sanity phase of that trial, psychiatrists testifying for the defense testified that the defendant was suffering from paranoid schizophrenia. We there held that the state trial court did not err by failing to hold a competency hearing:

> [T]he state court at no time was confronted with evidence of a long and extensive history of irrational behavior and mental illness as in *Pate, Drope,* and *Moore.* Nor was he, as in *Tillery* [*v. Eyman,* 492 F.2d 1056 (9th Cir.1974], confronted with a psychiatric report which threw doubt on the defendant's competency to stand trial....
>
> . . . .
>
> ... [T]he psychiatric testimony favorable to the petitioner presented during the sanity phase was directed toward his responsibility under the criminal law for the crime and not to his competency to stand trial.

*Id.* at 983. In Blazak's case, however, the psychiatric evaluations from the previous prosecution were directed toward his competency to stand trial.

Although the significance of the prior findings of Blazak's incompetency and his history of mental illness may diminish over time, we have held that "mechanical application of a rule that considers only the most recent report ... could lead to the exclusion of highly probative evidence of present incompetence that may be contained in a past report." *Caplan,* 633 F.2d at 539. Thus, past psychological reports are not to be disregarded as evidence relevant to the competency determination. Further, although Blazak was even-

tually declared competent,[6] that decision was based, at least in part, on Dr. Shankel's report that his paranoid schizophrenia was "in remission." Thus, the past psychological reports may give support for continuing concern about the reoccurrence of schizophrenia. Further, "once there is ... evidence [which raises a reasonable doubt about the defendant's competency to stand trial] from any source, there is a doubt that cannot be dispelled by resort to conflicting evidence." *Moore,* 464 F.2d at 666.

Finally, the State argues that the evidence must be presented to the trial court *prior to trial* and that "what the trial court might have learned *after* trial is irrelevant to that issue." We have held otherwise. In *Morris,* 414 F.2d at 259, we held that where a presentence report discussed the defendant's history of mental illness, "reasonable cause" required a competency hearing. We stated that "[u]ntil the receipt of the presentence report in this case there did not appear the 'reasonable cause' to trigger the proceedings under 18 U.S.C. § 4244." *Id.*[7]

Further, in *Moore,* we held that the failure to conduct a competency hearing deprived the defendant of his right to a fair trial, "unless we can say that there was before the trial court no substantial evidence casting doubt upon his competency *at any time before he was sentenced.*" *Moore,* 464 F.2d at 666 (emphasis added). Clearly, the information presented in the presentence report was before the trial court prior to Blazak's sentencing. *See also Drope,* 420 U.S. at 174, 95 S.Ct. at 905 ("In the present case there is no dispute as to the evidence possibly relevant to petitioner's mental condition that was before the trial court prior to trial *and thereafter.*") (emphasis added); *Steinsvik,* 640 F.2d at 953 (the presentence report indicated that the defendant had significant emotional problems, but did not indicate that he was not competent to stand trial). Although we held in *Hernandez v. Ylst,* 930 F.2d 714, 718 (9th Cir.1991), that a psychological report filed after the trial had begun "could not have contributed to any pre-trial determination of doubt," that report did not address the defendant's competence to stand trial and the denial of the writ was not based on the ground that the report was filed after trial.

The district court was therefore correct that evidence of Blazak's history of mental illness and the previous findings of incompetency was before the state trial court.[8] This evidence, alone, is sufficient to conclude that the trial court should have experienced a "bona fide doubt" regarding Blazak's competency to stand trial in 1974. Further, this evidence must be viewed in concert with Blazak's pretrial conduct. *Chavez v. United States,* 656 F.2d 512, 518 (9th Cir.1981) (each piece of evidence regarding a defendant's competence is not to be viewed in isolation; rather, "the trial judge must evaluate all the evidence and evaluate the probative value of each piece of evidence in light of the others.").

## III.

Blazak argues that he engaged in bizarre

---

6. The State argues that this latter finding of competency is a state court finding of fact which should be presumed correct absent one of the statutory factors listed in 28 U.S.C. § 2254(d). However, we are not reviewing the 1970 finding of competency; rather, we are reviewing the district court's conclusion that sufficient evidence existed before the state trial court to cast doubt on petitioner's competency to stand trial.

7. The State argues that *Morris* does not apply to this case, because *Morris* dealt with the federal statute mandating a competency evaluation, and "[t]his is a different standard from *Pate's* constitutional due process standard of reasonable doubt." The State cites no authority for this proposition, and we have explicitly applied the *Pate* standard in the 18 U.S.C. § 4244 context. *See Moore,* 464 F.2d at 666.

8. Contrary to the State's contention, *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), is not implicated in this appeal. Because the State argues that there was no evidence before the state trial court that would indicate that a competency hearing was necessary, the State contends that the district court's finding of a due process violation must be based on a conclusion that a competency hearing is necessary regardless of the evidence before the state trial court and is thus a "new rule". However, the district court based its conclusion, at least in part, on evidence before the state trial court and on then-existing law. The only issue on appeal is thus whether the district court was correct that there was sufficient evidence before the state trial court to raise a "bona fide doubt" as to Blazak's competency.

conduct in pretrial hearings.[9] On September 10, 1974, the State attempted to enforce an order requiring Blazak to provide handwriting exemplars. Blazak stated: "Your honor, I do not refuse the court order. I do refuse to let a lie be created and made into the evidence." When Judge Roylston stated that he did not make sense, Blazak responded, "Your honor, I can't comply with a lie and therever [sic] have it made into evidence. That does make quite a bit of sense."

The State argues that under the circumstances this exchange did not exhibit bizarre behavior. Blazak was concurrently being prosecuted for the murder of Ray Sergeant (for which he was acquitted), and a different judge had ordered that exemplars be taken in that case. The State argues that Judge Roylston was "justifiably confused" when Blazak referred to the other case, and that it is significant that neither counsel attempted to clarify Blazak's statements. However, the transcript reveals that the prosecutor informed Judge Roylston that he was seeking enforcement of an order relating to the other prosecution. Blazak's comments may reveal paranoid thinking, although alone are not enough to support a conclusion that the judge should have suspected Blazak was incompetent to stand trial.

Further, at a hearing on September 25, 1974, Blazak made various allegations, including that the police had secretly searched his apartment and trailer and had seized hypodermic syringes and a typewriter ribbon which they would use as evidence against him, that police had attempted to get him to take part in a gunfight with a third person, that Deputy County Attorney Howard had attempted to dissuade a defense witness from testifying, that Detective Barkman pressured a witness, that mail addressed to his wife and in-laws had been opened, and that his attorney had refused to allow him to interview witnesses at the jail.

The State again argues that this did not demonstrate strange or irrational behavior.[10] When taken separately and individually, a rational basis can be found for each of Blazak's complaints, but viewed as a whole they support an interpretation of paranoid thinking.

Dr. Geffen testified at the district court evidentiary hearing that interactions in the record between Blazak and the court and his attorney indicated that Blazak had difficulty responding in a relevant manner and in focusing on the immediate issues. While this pretrial behavior, without more, might not have been sufficient to alert the trial judge to the need for a competency hearing, when viewed in light of the information brought before the state trial court via the presentence report, reasonable doubt most certainly existed as to Blazak's competency to stand trial.

## IV.

The district court cited the testimony of Dr. Joseph Geffen [11] and Howard Kashman [12]

---

9. The district court did not rely on this factor in reaching its conclusion.

10. The State contends that Blazak had heard of the illegal search of the trailer through a second-hand account of a radio broadcast, and it was therefore not the product of hallucination or imagination. Further, Blazak's allegation that Detective Barkman had pressured witnesses was not irrational in view of one witness changing her testimony after interrogation by Barkman. Next, Blazak did not fantasize that the police were setting up a gunfight, because he heard about the plan from a third person. The State argues that his allegations of intimidation of witnesses by the prosecutor was not irrational, but a rational, serious concern. Moreover, the State argues that it was probably true that Blazak's mail was being opened by jail authorities for censorship.

11. Dr. Geffen opined that there was a reasonable basis in 1974 to conclude that an examination should have been conducted to determine Blazak's competency, based on the prior findings of incompetency, the previous medical records, and interactions between Blazak and the court and his attorney.

12. Howard Kashman testified that he was unaware of Blazak's history of mental illness, and that he would have raised the competency issue prior to trial had he known (if only to protect himself from a claim of inadequacy). While he had believed at the time of trial that his client was competent and understood the charges against him, he testified that his opinion might have been different had he known of the mental illness.

Kashman also testified that he had some problems communicating with his client prior to trial.

to support its conclusion that the trial court should have held a competency hearing. The State is correct that this testimony was not before the state trial court, and thus cannot be utilized to determine whether there existed a "bona fide doubt" regarding Blazak's competency.

## V.

When all of the evidence before the state trial court is viewed together, a "bona fide doubt" exists as to whether Blazak was competent to stand trial. The evidence of Blazak's history of mental illness and competency adjudications was brought directly to the attention of the state trial court. The presentence report fully discussed the previous findings of incompetence and the resulting commitments to the State Hospital, included synopses of the various diagnoses of Blazak's mental problems, and, most significantly, appended a report by Dr. Shankel diagnosing Blazak as a paranoid schizophrenic who was not competent to stand trial. Finally, Blazak engaged in behavior prior to trial which may have indicated paranoid or irrational thinking. The district court's grant of the writ of habeas corpus is affirmed.

This cause is remanded to the district court with instructions to issue the writ within 90 days unless the State elects to retry him within 90 days, following a determination that Blazak is competent to stand trial.

AFFIRMED.

BEEZER, Circuit Judge, dissenting:

For the reasons and upon the authorities contained in my dissenting opinion previously reported, I conclude that we lack jurisdiction to consider the merits of this appeal. *Blazak v. Ricketts*, 971 F.2d 1408, 1415 (9th Cir. 1992).

I express no views with respect to the merits absent the entry of a final judgment in the district court. I accept and follow the teaching of Justice Scalia in *Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) and of Chief Justice Rehnquist in *Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979).

Their position, best summarized, is that, when a judge believes that no jurisdiction exists, the judge should express no view on the merits. *See Honig*, 484 U.S. at 332, 108 S.Ct. at 609 (Scalia, J., dissenting) ("Without expressing any views on the merits of this case, I respectfully dissent because in my opinion we have no authority to decide it"); *Orr*, 440 U.S. at 300, 99 S.Ct. at 1122 (Rehnquist, J., dissenting) ("I do not think the Court, in deciding the merits of appellant's constitutional claim, has exercised the self-restraint that Art. III requires in this case. I would therefore dismiss Mr. Orr's appeal").

I am also aware of a modified position taken in a concurring opinion filed by Justice Stevens in *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983). In that case, Justice Stevens, after arguing that the Court lacked jurisdiction, proceeded to vote on the merits. *See Johnson*, 460 U.S. at 89–90, 103 S.Ct. at 978–79 (Stevens, J., concurring in judgment) (Because no jurisdiction exists, "I therefore would simply dismiss the writ of certiorari. Because a fifth vote is necessary ..., I join the disposition which will allow the judgment of the Connecticut Supreme Court to stand."). Justice Stevens did not, however, express any views on the merits of the case other than through his vote.

As the members of the panel who agree that this court has jurisdiction are divided on the merits, the prevailing opinion cannot be cited as precedent in future cases. *Neil v. Biggers*, 409 U.S. 188, 192, 93 S.Ct. 375, 378, 34 L.Ed.2d 401 (1972).

When asked if Blazak was able to assist him in his defense, Kashman stated, "I have trouble with the term 'assist'. He certainly furnished information to me, some of which was helpful and some of which led me on a wild goose chase". Kashman testified that the "overwhelming number" of the 20–30 witness names provided by Blazak turned out not to know anything.

When Kashman told Blazak that he would not call these witnesses, Blazak responded, in substance, "They are lying now. Call them. I want them subpoenaed. Put them on the stand and they'll tell the truth...." Kashman testified that these communication problems were "unusual" and that he could not recall "anything quite like that with other clients...."

BRUNETTI, Circuit Judge, dissenting:

This case presents the question of whether the trial court had sufficient evidence before it to call *sua sponte* for a competency hearing. Because I believe that the evidence was insufficient, I dissent.

## I

I will first summarize the situation facing the trial court prior to Blazak's sentencing in November 1974. The strongest evidence of Blazak's incompetence was the presentence report, which contained summaries of seven psychiatric reports prepared for Blazak's 1968 trial. Not one of these reports explicitly found Blazak incompetent to stand trial. Two—Dr. Shankel's and Dr. Durfee's—declared him to be highly dangerous, and requiring mental hospitalization, but neither declared him incompetent. However, the other three psychiatrists—Drs. Baker, Pierce, and Willis—explicitly found him competent to stand trial.

The 1974 presentence report also contained the presentence report prepared for Blazak's 1968 sentencing. The 1968 presentence report noted that Blazak had thrice before been declared incompetent to stand trial and committed to the state mental hospital. The 1968 presentence report also included Dr. Shankel's June 2, 1967 psychiatric report, which found Blazak incompetent to stand trial. Counterbalancing this evidence of incompetence was the trial court's subsequent determination in 1970 that Blazak was competent to stand trial.

The majority opinion asserts that Blazak also exhibited behavior in pretrial hearings which, viewed with Blazak's history of mental illness contained in the presentence report, should have shown Blazak's attorneys and the court that there was reasonable doubt as to his competency to stand trial. However, despite this allegedly "bizarre" behavior—his refusal to provide handwriting exemplars and his allegations at the September 25, 1974 hearing—Blazak's attorney Kashman never requested a competency hearing, and apparently neither the trial court nor the prosecutor saw a need for one either.

## II

To summarize, the evidence of Blazak's incompetence in November 1974 consisted of (a) the allegedly "bizarre" pretrial behavior and (b) the three 1967 determinations of incompetence, based primarily if not exclusively on the diagnosis of one psychiatrist—Dr. Shankel. Counterbalancing this evidence were (a) attorney Kashman's apparent belief in his client's competence, (b) the trial court's 1970 determination that Blazak was competent to stand trial, and (c) the three 1967–68 psychiatric reports, from three different doctors, finding Blazak competent. When contrasted with the situations presented in our prior decisions, I find the totality of this evidence to be insufficient as a matter of law to raise sufficient doubt of Blazak's incompetence for a hearing to have been constitutionally required.

The cases that most strongly support Blazak's position are *Moore v. United States,* 464 F.2d 663 (9th Cir.1972), and *Morris v. United States,* 414 F.2d 258 (9th Cir.1969), both of which are cited by the majority opinion to support its holding. However, *Moore* is distinguishable from the present situation on the ground that the court there had *recent* reports from a psychiatrist and the Bureau of Prisons describing the defendant's extensive mental problems. In fact, the reason the psychiatrist had prepared the report was that the defendant's attorney had moved for a psychiatric examination under 18 U.S.C. § 4244. *Moore,* 464 F.2d at 665. In Blazak's case, however, all the court had were conflicting six- and seven-year old psychiatric reports, along with a defendant who was basically rational and his attorney who had never moved for a psychiatric exam, let alone a competency hearing. As we explained in *Chavez v. United States,* 656 F.2d 512 (9th Cir.1981),

> a *current* psychiatric report might amount to substantial evidence of incompetence and thus raise a good faith doubt that cannot be dispelled by resort to conflicting evidence of competence without a hearing. *On the other hand, an old psychiatric report indicating incompetence in the past may lose its probative value by the pas-*

*sage of time and subsequent facts that all point to present competence.*

*Id.* at 518 (citation omitted) (emphasis added). In Blazak's case, any "substantial doubt" of incompetence created by the 1967–68 psychiatric reports was outweighed by the 1970 finding of competence and the lack of any significant indication in 1974 that Blazak was incompetent to stand trial.

*Morris* provides stronger support for Blazak's position. As in *Blazak,* no competency hearing was requested by either party or the court. In a very short opinion, we held that:

> Until the receipt of the pre-sentence report in this case there did not appear the "reasonable cause" to trigger the proceedings under 18 U.S.C. § 4244. But the history of mental illness and treatment, the finding that at a prior period appellant had at that time been insane, although apparently found thereafter to have recovered his sanity and the prior findings at various times of a psychotic condition, all contained in the pre-sentence report, provided the "reasonable cause to believe" [that defendant might be incompetent].

*Morris,* 414 F.2d at 259. At a general level, this holding provides support for Blazak's position. However, it is impossible to tell from the *Morris* opinion how old the prior findings of insanity and psychosis were, and whether any intervening events had reduced their validity.

By contrast, our more recent decisions in *United States v. Caplan,* 633 F.2d 534 (9th Cir.1980) and *Steinsvik v. Vinzant,* 640 F.2d 949 (9th Cir.1981) provide stronger support for the State's position than *Moore* and *Morris* do for Blazak's. In *Caplan,* the district court had before it in March 1979 an October 1978 finding by an Arizona state court that the defendant was incompetent to stand trial, followed by a February 1979 psychiatric report concluding that the defendant was competent to stand trial. The district court declined to hold a competency hearing. *Id.* at 537.

We affirmed the district court's decision. *Id.* at 540. We noted that the 1978 finding of incompetence was based on psychiatric reports addressing defendant's mental state at the time, and not at any future date. *Id.* at

541–42. We further noted that the defendant had been hospitalized after the finding of incompetence, and that following treatment had been found competent by a psychiatrist. "[The earlier reports] were not substantial evidence of appellant's *present* incompetency." *Id.* at 541 (emphasis added). Similarly, in Blazak's case, the 1967–68 psychiatric reports and 1967 finding of incompetence were not "substantial evidence" of Blazak's incompetence in 1974, especially given the 1970 finding of competence.

Furthermore, unlike the attorney in *Caplan,* attorney Kashman here never moved for a competency hearing. We have previously held that a defense attorney's failure to request a competency hearing indicates an "apparent belief" in the client's competence to stand trial and is a factor weighing against the need for a competency hearing. *De Kaplany v. Enomoto,* 540 F.2d 975, 983 (9th Cir.1976), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977). *See also Hernandez v. Ylst,* 930 F.2d 714, 718 (9th Cir.1991) ("We deem significant the fact that the trial judge, government counsel, and Hernandez's own attorney did not perceive a reasonable cause to believe Hernandez was incompetent.").

In *Steinsvik,* the trial court had before it a presentence report which disclosed that only 18 months previously, the defendant had been hospitalized for mental health problems and had been diagnosed as a borderline chronic paranoid schizophrenic. *Id.* at 953. We adopted the finding of the magistrate that although

> [t]he presentence report obviously indicated that Steinsvik had significant emotional problems ... there is absolutely nothing in it to have indicated to the trial judge that Steinsvik was not competent either at the time of plea or when he was sentenced.

*Id.* Similarly, although Blazak's presentence report indicated that Blazak had significant emotional problems, there was nothing in it to indicate that he was not competent to stand trial in November 1974.

*Steinsvik* supports the State's position in another respect as well. Like Blazak, Steinsvik had exhibited bizarre behavior during

the proceedings against him; at the time of the entry of his guilty plea, he expressed some confusion regarding the sentencing procedures and the entry of the guilty plea. However, this court found that his behavior did not indicate a lack of competence to plead guilty. *Id.* at 952. Similarly, Blazak's behavior (and particularly his refusal to submit a handwriting exemplar) should not be viewed as indicating a lack of competence to stand trial.[1] *See De Kaplany*, 540 F.2d at 978 (single courtroom outburst by defendant not sufficient evidence of incompetence to require a competency hearing).

Overall, *Caplan* and *Steinsvik* provide strong support for the State's position that the evidence before the Arizona trial court was not sufficient to raise a reasonable doubt regarding Blazak's competence to stand trial and thereby trigger the need for a competency hearing. The trial court here could reasonably have concluded, like the trial courts in *Caplan* and *Steinsvik*, that the older psychiatric reports and findings of incompetence were outweighed by the later finding of competence, the lack of any behavior on Blazak's part that would indicate incompetence, and the lack of any request from Blazak's attorney for a competency hearing. I dissent and would remand to the district court for consideration of the remaining twenty-six challenges to his death sentence which were not previously addressed by the district court.

---

1. The majority contends that Blazak's behavior "support[s] an interpretation of paranoid thinking." However, there appears to be little justification for this assertion. The objection to the handwriting exemplar could just as easily be explained by a confusion over which case was at issue or over evidence law, and the allegations did have some basis in fact. *See* n. 10 of majority opinion. If Blazak had been truly incompetent to stand trial, he would have given far more drastic evidence of mental infirmities than these two small incidents.